[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MOTION TO STRIKE (#116)
The plaintiff, Fleet Bank, N.A. ("Fleet") filed a complaint dated March 4, 1992 commencing a foreclosure action against Winthrop Partners Limited Partnership ("Winthrop"), the mortgagor; Sabin C. Streeter, Richard E. Rieder, Duane W. Brookes, Seymour Smith, and Angust McDonald/Gary Sharpe Pension Profit Sharing Trust ("Trust") (collectively the "Guarantors"); and CT Page 10602 David R. Shailer and Suzanne Askew.
The defendant Winthrop entered into a Revolving Credit Agreement with the United Bank and Trust Company ("UBT") dated March 1, 1992 as a amended by an Amendment dated December 12, 1988. Winthrop also executed a Revolving Promissory Note ("Note") dated December 16, 1988. The Note is secured by an Open-End Mortgage dated November 28, 1988, and recorded in the Deep River and Chester Land Records. ("Revolving Credit Agreement" and "Note" collectively; "Loan") The mortgaged property consists of approximately 59.72 acres of land known as the Shailar Farms Subdivision located in Deep River and Chester.
The Revolving Credit Agreement provided that UBT lend to Winthrop the lesser of $800,000 or $40,000 times the number of approved and unsold lots on 72.5 acres owned by Winthrop located in Chester and Deep River, Connecticut (the "Premises"). Plaintiff loaned funds under the Revolving Credit Agreement to finance Winthrop's activities, including the costs for the development of the Premises.
In March, 1991, Winthrop alleges that it needed funds to pay interest on the Note and to complete construction of a road in order to access and sell the approved and unsold lots located on the Premises. Winthrop alleges that the plaintiff refused to provide funds to construct the road, pay the interest on the Note, and pay taxes on the Premises, causing Winthrop to be unable to complete the development of the Premises and to generate income from the residential lots.
By a letter dated January 2, 1992, Fleet Bank, as successor-in-interest to UBT, gave notice to Winthrop that it had defaulted under the Loan. In a certified letter dated January 31, 1992, Fleet Bank gave notice to Winthrop that Fleet had exercised its right of acceleration. Fleet made demand upon Winthrop for immediate payment of all sums due pursuant to the Loan. Fleet, similarly, gave notice and made a demand upon the Guarantors.
On June 18, 1992, defendants, Winthrop, Streeter, Rieder and Smith filed an answer denying that the Loan was in default. The defendants also raised seven special defenses and four counterclaims. The first special defense asserts that the plaintiff's failure to lend funds to the defendants pursuant to the Revolving Credit Agreement constituted a breach of contract. CT Page 10603 The second special defense asserts that plaintiff's failure to lend funds was a breach of the covenant of good faith and fair dealing implied in the Revolving Credit Agreement. In the third special defense the defendants assert that the plaintiff is estopped from charging or collecting the interest or other charges due on the Note, accelerating payment of the Note, foreclosing the First or the Open-Ended Mortgage, or enforcing the Guaranty Agreements.
In the fourth special defense the defendants assert that the plaintiff's course of conduct constituted an implied waiver of the alleged non-payment of interest or other charges due on the Note, accelerating payment of the Note, foreclosing the First or the Open-Ended Mortgages, or enforcing the Guaranty Agreements. The defendant Rieder asserts in the fifth special defense that the plaintiff's execution of a Guaranty Agreement dated March 1, 1988 constituted an accord and satisfaction with regard to the personal liability of Rieder. The defendant Rieder asserts in the sixth special defense that the plaintiff is estopped from enforcing the personal liability of Rieder. In the seventh special defense the defendant Rieder asserts that the plaintiff's actions constituted an implied waiver concerning Rieder.
In the first counterclaim, the defendants assert that the failure to lend funds to the defendants constituted a breach of contract. The defendants assert in the second counterclaim that the plaintiff's failure to lend the defendants funds was a breach of its covenant and obligation of good faith and fair dealing. The defendants assert in the third counterclaim that the plaintiff's characterization that it would continue to lend the defendants funds pursuant to the Revolving Credit Agreement constituted misrepresentation. The defendants assert in the fourth counterclaim that the plaintiffs failure to lend the defendants funds constituted a violation of the Connecticut Unfair Trade Practices Act, C.G.S. 42-110a et seq.("CUTPA").
The plaintiff filed a motion to strike dated September 11, 1992, accompanied by a memorandum of law pursuant to Practice Book 152. The plaintiff seeks to strike special defenses one through five, and the second, third and fourth counterclaims of the defendants amended answer. The defendants filed a memorandum of law in opposition dated October 7, 1992.
"The motion to strike is used to test the legal sufficiency of a pleading." Ferryman v. Groton, 212 Conn. 138, 142, CT Page 10604561 A.2d 432 (1989), citing Practice Book 152. The pleadings susceptible to a motion to strike are the "complaint, counterclaim, crosscomplaint, prayer, answer [and] special defense." Deutsche Bank Co. v. Hermann, 4 CSCR 771 (September 28, 1989, Cioffi, J.), citing Practice Book 152. In reviewing the legal sufficiency of a pleading, the trial court must "assume the truth of the facts alleged and construe them in the light most favorable to sustaining the sufficiency of the [pleading]." Bouchard v. People's Bank, 219 Conn. 465, 467, 594 A.2d 1 (1991); citing Michaud v. Wawruck, 209 Conn. 407, 408, 551 A.2d 738
(1988).
The motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "[I]f facts provable under the allegations would support a defense or a cause of action, the [motion to strike] must fail." (citations omitted) Ferryman v. Groton, supra, 142. "In deciding the plaintiff's motion to strike, . . .the court [is] obliged. . . to assume the truth of the allegations contained in the defendants' special defense." Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528, 530 n. 2,461 A.2d 1369 (1983).
A. First Special Defense: Breach of Contract
The plaintiff argues that a breach of contract is not a recognized defense to foreclosure. The plaintiff asserts that a failure to lend funds to pay interest on the note and to build roads does not give rise to a defense to a foreclosure action. Plaintiff asserts that such a defense does not constitute discharge, release, satisfaction or an equitable defense in the form of accident, mistake or fraud.
The defendants argue that the actions of the plaintiffs in failing to lend funds constituted a breach of contract because it violated the terms of the Revolving Credit Agreement. The defendants assert that this breach of the Agreement precluded performance by the defendants and thus is a defense to a foreclosure action
"At common law, the available defenses to a complaint seeking foreclosure of a mortgage are limited to such things as payment, discharge, release, satisfaction or the invalidity of the lien." Conn. Savings Bank v. Reilly, 12 Conn. Sup. 327
CT Page 10605 (Super.Ct. 1944) Under the doctrine of equity, if the "mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had. . ." Petterson v. Weinstock, 106 Conn. 436, 441 (1927). "[A]n action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties." Hartford Federal Savings Loan Assn. v. Tucker, 196 Conn. 172,175, 491 A.2d 1084, cert. denied 474 U.S. 920, 106 S.Ct. 250,88 L.Ed. 258 (1985).
A breach of contract claim is neither a recognized defense to a foreclosure action nor a defense in equity. Although the defendants argue that the special defense of a breach of the covenant of good faith and fair dealing has been upheld no authority was provided upholding a breach of contract as a special defense to foreclosure. Motion to strike first special defense is granted.
 B. Second Special Defense: Breach of Covenant of Good Faith and Fair Dealing
The plaintiff argues that a breach of an implied convenant of good faith and fair dealing is not within the limited defenses to a foreclosure action. In addition, the plaintiff asserts that even if the defense were a recognized defense to foreclosure the defendants have not asserted the essential element: dishonesty in fact. (Plaintiff's Memorandum in Support of Motion to Strike, p. 6). The plaintiff argues that the defendants have failed to assert that Fleet's actions, the alleged refusal to lend funds to the defendants, were influenced by "dishonesty in fact."
The defendants argue that a breach of an implied convenant of good faith and fair dealing constitutes a valid defense to a foreclosure action. Defendants assert that because a foreclosure action is equitable in nature, the court may consider a breach of the covenant of good faith and fair dealing as a special defense. The defendants also argue that there is no authority for the position that "dishonesty in fact" must be alleged to establish a breach of "good faith."
"[A] foreclosure action is equitable in nature." Bank of Boston, Connecticut v. Capitol West Associates Limited Partnership, 7 CSCR 1069, 1070 (September 28, 1992, Freed, J.); CT Page 10606 citing Boretz v. Segar, 124 Conn. 320, 324 (1938). Where the conduct of a plaintiff is inequitable, the court may withhold foreclosure on such equitable considerations and principles. Lettieri v. American Savings Bank, 182 Conn. 1,12 (1980), Hamm v. Taylor, 180 Conn. 491, 497 (1980).
"[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." Warner v. Konover, 210 Conn. 150, 154, 553 A.2d 1138 (1989); see Restatment (Second), Contracts, Sec. 205. "An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut." Economic Development Associates v. Cititrust,3 Conn. L. Rptr. 403 (1991) (Dranginis, J.), citing Magnan v. Anaconda Industries, 193 Conn. 558, 566, 479 A.2d 781 (1984).
A special defense complies with Practice Book 164 as long as it contains facts consistent with the plaintiff's statements and shows, notwithstanding, that the plaintiff has no cause of action. Bank of Boston, Connecticut, supra, 1070.
A breach of good faith and fair dealing is a valid special defense to a foreclosure action. The defendants' second special defense asserts that the plaintiff has no cause of action because the plaintiff's failure to lend funds precipitated the foreclosure action. The defendants assert that they relied on the course of dealing of the plaintiff of lending funds in both repaying a portion of the funds that they borrowed and in using the funds to pay interest on the promissory note.
A court may find that this conduct was inequitable and accordingly it could withhold foreclosure based on such equitable considerations. The plaintiff's motion to strike the defendants second special defense denied.
 C. Third and Fourth Special Defenses: Estoppel and Implied Waiver
Defendants assert that they entered the Revolving Credit Agreement with the expectation that the plaintiff would lend certain funds to the defendants. The defendants argue that the plaintiff engaged in a course of conduct in which the plaintiff would lend funds to enable the defendants to pay interest on the Loan. Defendants assert that in reliance on both the Agreement and the conduct of the plaintiff, the defendants employed CT Page 10607 "surveyors, engineers and lawyers to prepare plans and seek the approval of the Planning and Zoning authorities of the Towns of Chester and Deep River." (Defendants' Memorandum in Opposition to Motion to Strike, p. 11).
The plaintiff asserts that the defendants have failed to allege facts which give rise to a special defense of estoppel or implied waiver. The plaintiff argues that the defendants have failed to make any reference to any deed or act which was intended by the plaintiff to induce detrimental reliance on the part of the defendants.
In Connecticut, "any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . ." (Citations omitted) Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699, 590 A.2d 957 (1991), citing O'Sullivan v. Bergenty, 214 Conn. 641, 648 573 A.2d 729 (1990). A claim of estoppel also exists where either an act or representation is made to induce reliance which causes another to change his position. Katz Realty, Inc. v. Norwalk Fabricators, Inc., 14 Conn. App. 396, 401, 541 A.2d 519 (1988).
"This court, while recognizing the analytical distinction between express waiver and estoppel, had held that implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable." O'Hara v. State, 218 Conn. 628,641, 590 A.2d 948 (1991).
The defendants have sufficiently alleged the special defense of implied waiver and estoppel. Paragraphs 4, 12 and 13 of defendants' third and fourth special defenses adequately state allegations which give rise to the special defenses of implied waiver and estoppel. The defendants have asserted that: (1) over $100,000 was spent in preparation of the development; (2) that prior to March 1, 1991, the plaintiff loaned Winthrop funds to finance such activities, including funds to pay the monthly interest; and (3) that the defendant repaid borrowed funds in reliance on the plaintiff's promise to further lend funds to defendants in order to pay the interest on Loan.
These allegations, construed most favorably to the defendant, CT Page 10608 establish that the plaintiff acted in a manner intended to induce the defendants to believe that they could expect funds to pay the interest on the Loan. Moreover, the defendants acted upon that representation by continuing to repay and borrow with the expectation that such funds would be extended to both develop their property and pay interest on the Loan. Therefore, having satisfied the essential elements for implied waiver and estoppel, the motion to strike special defenses three and four is denied.
D. Fifth Special Defense: Accord and Satisfaction
The fifth special defense, accord and satisfaction, is a defense raised solely by the defendant Rieder. The defendant asserts that a March 1, 1988 Guaranty Agreement signed by Rieder constituted an accord and satisfaction. Rieder asserts that this specific guarantee was sought even though Rieder, a general partner of Winthrop, was secondarily liable under the promissory note. Rieder argues that the general partners signing of the promissory note associated with the Revolving Credit Agreement constituted a separate contract.
Rieder asserts that the subsequent signing of the Guaranty Agreement was a second contract which the plaintiff represented to be a full settlement of its right to claim liability under the terms of the promissory note. In effect, argues Rieder, this second contract or agreement is an accord and satisfaction which excuses Rieder from liability under the promissory note.
Plaintiff asserts that no accord and satisfaction exists because there was no "old" contract in existence for the parties to settle with a "new" contract. Plaintiff argues that Winthrop's signing of the promissory note and Rieder's individually entering into the Guaranty Agreement on March 1, 1988 were part of one transaction. Plaintiff asserts that the Guaranty Agreement did not constitute a new agreement intended as a settlement of a claim arising from the promissory note signed the same day.
"Available as a defense in appropriate circumstances, the policy of accord and satisfaction is to bar further if the parties agreed to satisfy all existing claims by means of a substituted performance." Geisco, Inc. v. Honeywell, Inc., 682 F.2d 54, 57 (2d Cir. 1982). "An accord is a contract between creditor and debtor for the settlement of CT Page 10609 a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." (Citation omitted.) Gillis v. Gillis, 21 Conn. App. 549, 552,575 A.2d 230 (1990). The defendant is required to allege and prove "`a new agreement with a new consideration.'" Id., citing Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652,656 110 A.2d 52 (1920).
The allegations that the plaintiff represented that the Guaranty Agreement was a full settlement of its rights to claim liability under the terms of the promissory note is not sufficient to establish a special defense of accord and satisfaction. Rather, the plaintiff's allegations are sufficient to establish that the Guaranty Agreement was part of the Revolving Credit Agreement and Note, and not a new agreement. The plaintiff's motion to strike the fifth special defense is granted on the ground that insufficient allegations have been made to establish that a new agreement exists which acts as accord and satisfaction.
 E. Second Counterclaim: Breach of the Implied Covenant of Good Faith and Fair Dealing
Plaintiff argues that the duty of good faith only requires that the parties to a commercial transaction act honestly. The plaintiff asserts that the defendants fail to allege that Fleet's actions were motivated or influenced by dishonesty in fact. The refusal to advance funds to the defendants, asserts the plaintiff, does not in and of itself allege any dishonesty in fact which is necessary to establish a breach of an implied covenant of good faith.
The defendants argue that the plaintiff intentionally and with full knowledge of its obligation under the Revolving Credit Agreement stopped lending the funds to the defendants as required under the Agreement. The defendants assert that the plaintiff established a course of conduct in which the defendants were encouraged to pay all of their sales proceeds to the plaintiff in return for plaintiff's assurances that more funds would be provided to pay interest on the debt. The defendants argue that the plaintiff's failure to loan funds to the defendants, after such a course of conduct was established, constituted dishonesty in fact and was a breach of an implied covenant of good faith and fair dealing. CT Page 10610
"[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." Warner v. Konover, 210 Conn. 150, 154,553 A.2d 1138 (1989); see Restatement (Second), Contracts, Sec. 205 "An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut." Economic Development Associates, supra, 403; citing Magnan, supra. 566.
The duty of good faith and fair dealing is "[e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Verrastro v. Middlesex Ins. Co., 207 Conn. 179, 190, 540 A.2d 693 (1988).
The allegations, construed in their most favorable light, support a cause of action for breach of an implied covenant of good faith and fair dealing. The plaintiff's failure to lend funds to the defendants, after the plaintiff's course of conduct indicated that such funds would be available upon the defendants early repayments on the Loan, gives rise to a cause of action for a breach of the implied covenant of good faith and fair dealing. The defendants could have reasonably presumed that this Revolving Credit Agreement was intended to provide them with funds in order to pay the interest on the Loan.
The court could find that the failure of the plaintiff to further provide funds to pay interest, in accordance with the defendants' understanding that such funds would be provided, gives rise to a cause of action for a breach of the implied covenant of good faith and fair dealing.
The plaintiff's motion to strike the second counterclaim is denied.
F. Third Counterclaim: Misrepresentation
The defendants assert that the plaintiff engaged in misrepresentation by making representations that Fleet CT Page 10611 would continue to lend funds to the defendant provided the defendants continued to make periodic repayments on the Loan. It is this pattern of borrowing, repaying and borrowing, according to the defendants, upon which they relied in continuing to make repayments on the principle of the Loan. The defendants argue that by relying on such misrepresentations they were injured because they could have held the funds used to pay the principle to pay the interest on the Loan. The defendants assert that this foreclosure action is a direct result of plaintiff's misrepresentations.
Plaintiff argues that no claim of misrepresentation exists because Fleet's course of conduct was not intended to induce any early repayments by Winthrop. The plaintiff argues that its conduct was intended only to fulfill the terms of the contract agreed to by the parties. In addition, the plaintiff argues that no injury has been established by the defendants as the result of the early repayments on the Loan. The plaintiff asserts that such early repayments help the borrower by reducing the interest burden. Therefore, the plaintiff asserts that because no injury has been established there can be no cause of action for misrepresentation.
The essential elements of misrepresentation are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act upon it; and (4) that the latter did so act on it to his injury." J. Frederick Scholes Agency v. Mitchell,191 Conn. 353, 358, 464 A.2d 795 (1983); quoting Miller v. Appleby, 183 Conn. 51, 55, 438 A.2d 811 (1981).
"Where a defendant has a special means of knowledge, and a plaintiff can under the circumstances attribute to the former accurate knowledge of what is represented, the plaintiff need not show the actual knowledge of the falsity of the representation." Id. "An actionable misrepresentation, whether made knowingly, recklessly, negligently or innocently, must be made for the purposes of inducing action upon it." Id., 359.
Sufficient allegations have been made to give rise to a cause of action for misrepresentation. The defendants allege that the plaintiff was negligent in representing CT Page 10612 to the defendants, through their course of conduct, that the defendants would be entitled to further funds upon the periodic repayment of the Loan principle. The defendants allege that Fleet, as a lender, had a special means of knowledge and can be presumed to know that its representation to the defendants that they would have continued access to funds was not accurate. Through this course of conduct the court could find that the plaintiff induced the defendants to continue to repay and borrow. The court could find that the defendants suffered an injury in continuing to repay on the principle because the subsequent denial of further funds to pay the interest on the Loan by the plaintiff resulted in this foreclosure action. The plaintiff's motion to strike the third counterclaim is denied.
G. Fourth Counterclaim: CUTPA Violation
Plaintiff argues that the fourth counterclaim, alleging a violation of CUTPA, should be stricken because it is not applicable to banks. The defendants assert that CUTPA is applicable to banks because it is a remedial statute which should be liberally construed.
General Statutes Sec. 42-110b(a) of CUTPA provides in pertinent part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Sec. 42-110b(a). "A violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355, 525 A.2d 57 (1987).
 In determining whether the practice in question violates CUTPA, courts employ the following criteria: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive CT Page 10613 or unscrupulous; (3) whether it causes substantial injury to consumers. . . (Citations omitted.)
Connecticut National Bank v. Anderson, 5 Conn. L. Rptr. No. 3, 60, 62 (October 21, 1991) (Pickett, J); citing Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-312,572 A.2d 307 (1990). "All three criteria `do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" Anderson, supra, 62; quoting Web, supra 355.
While there is a conflict of authority as to whether CUTPA applies to banks, a majority of superior courts have held that CUTPA does apply to banks. See, e.g., Faitella v. North Atlantic Planning Corp., 5 Conn. L. Rptr. No. 16, 431 (February 3, 1992) (Byrne, J); see Economic Development v. Cititrust, 3 Conn. L. Rptr. No. 16, 517 (April 15, 1991) Draganis, J.); Peterson v. People's Bank,1 Conn. L. Rptr. 73 (1989) (Freed, J.); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499 (1989) (Pickett, J); Eylward v. Bank of Boston, Connecticut, 4 Conn. L. Rptr. No. 15, 504 (August 26, 1991) (Burns, J.); Weisman v. Westport Bank and Trust, 1 CSCR 283 (1986) (Zoarski, J.). See Bristol Savings Bank v. Sattler, 4 CSCR 351 (1989) (Aronson, J.); People's Bank v. Horesco, 1 CSCR 62 (1986) (Jacobson, J.).
The plaintiff's motion to strike the fourth counterclaim is denied because the defendants' assertions sufficiently allege a violation of CUTPA. At the very least paragraphs 14, 15, 16 and 20 through 22 contain sufficient allegations that the plaintiff engaged in unfair practices by refusing to loan funds to the defendants after establishing a course of conduct in which the defendants had the expectation that such funds would be provided. Therefore, the plaintiff's motion to strike the fourth counterclaim is denied.
JOHN WALSH, J.