682 F.2d 54
 GEISCO, INC., James D. Geis and Henry R. Cofek, d/b/a Geisco
Associates, Inc., Plaintiffs-Appellants-Cross-Appellees,
v.
HONEYWELL, INC., Defendant-Appellee-Cross-Appellant.
 Nos. 541, 658, Dockets 81-7530, 81-7550.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 15, 1982.
Decided June 25, 1982.
 
 1
 Lawrence W. Iannotti, New Haven, Conn. (Kimberly J. Roberts, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., of counsel), for defendant-appellee-cross-appellant.
 
 
 2
 Stephen I. Traub, New Haven, Conn. (Lynch, Traub, Keefe & Marlowe, New Haven, Conn., of counsel), for plaintiffs-appellants-cross-appellees.
 
 
 3
 Before OAKES and NEWMAN, Circuit Judges, and HAIGHT, District Judge.*
 
 HAIGHT, District Judge:
 
 4
 Appellants Geisco, Inc., James D. Geis, and Henry R. Cofek, doing business as Geisco Associates, plaintiffs in a suit for breach of contract jurisdictionally based on diversity of citizenship, appeal from a directed verdict and judgment entered in favor of defendant-appellee-cross-appellant Honeywell, Inc., by the United States District Court for the District of Connecticut (Warren W. Eginton, District Judge). The district court concluded in mid-trial that appellants' claims were barred by an accord and satisfaction. The propriety of that ruling forms the central issue on appeal. We affirm.
 
 I.
 
 5
 Appellant James Geis, a resident of Connecticut, holds a degree in physics, and is experienced in the marketing of industrial process control devices. Appellant Henry Cofek, associated with Geis in the venture in suit, is a resident of Massachusetts, and a mechanical engineer. Appellee Honeywell, Inc. is a Delaware corporation with its corporate headquarters in Minneapolis, Minnesota.
 
 
 6
 At the pertinent times Geis and Cofek were attempting to develop a laser scanning inspection system ("LSIS"). In July 1972, Geis approached Honeywell personnel in Minneapolis, seeking to interest Honeywell in providing financial, technical and marketing support for the development and manufacture of the LSIS. Geis was referred to the Honeywell Radiation Center in Lexington, Massachusetts, a Honeywell facility primarily engaged in developing and manufacturing products involving electro-optical technology. As negotiations progressed, Honeywell representatives suggested that Geis and Cofek form a corporation as a vehicle for the negotiations and any contracts that might emerge. In consequence, Geis and Cofek organized appellant Geisco, Inc., a Connecticut corporation.
 
 
 7
 A number of agreements arose out of these negotiations. On October 16, 1972, Honeywell and Geisco entered into a confidential disclosure agreement, pursuant to which Honeywell agreed to keep confidential any proprietary information so designated and furnished by Geisco to Honeywell. On November 14, 1972, Honeywell furnished to Geisco a "purchase order" covering consulting services with a view towards preparation of a proposal for an LSIS. Performance under this purchase order was to take place during the period November 13, 1972 to December 13, 1972, at a price of $9,680, payable by Honeywell to Geisco. The terms and conditions for consulting services accompanying the purchase order provided:
 
 
 8
 "The buyer (Honeywell) may at any time, terminate the services covered by this order. The buyer shall not incur any liability because of such termination."
 
 
 9
 Prospects must have seemed encouraging, because on December 8, 1972, the director of marketing at Honeywell Radiation Center sent a letter to Geisco which reads in part:
 
 
 10
 "In regards to the long term objectives, it is our intent to negotiate a mutually satisfactory agreement which will insure royalty payments to GEISCO and which will delineate the long term relationship between Honeywell and GEISCO. I anticipate being able to define the form of this relationship at the completion of the present technical/marketing investigation phase. To that end, since we are running out of time, it is my intent to extend the present Purchase Order for another six (6) weeks at the same funding level as the present six (6) weeks."
 
 
 11
 Consistent with that letter, Honeywell extended the period of Geisco's consulting services for an additional six weeks beyond that contemplated in the original purchase order.
 
 
 12
 The continuing negotiations and consultations between the parties are evidenced by a series of further purchase order agreements, the details of which it is not necessary to recount. Suffice it to say that on June 7, 1973, Honeywell issued to Geisco purchase order BX64040, which called upon Geisco to supply the personal services of Geis and Cofek as consultants in the design, development and sales promotion of the LSIS, for a period of one year commencing June 11, 1973 and terminating June 11, 1974. That purchase order further specified that Honeywell had the right to exercise annual options, for the continued personal services of Geis and Cofek for a period of four years from the first termination date, the options to be exercised thirty days before termination date. The purchase order also contained by reference a termination provision identical to that contained in the initial purchase order, quoted supra. Under purchase order BX64040, Geis was to be paid at the rate of $2500 per month, not to exceed $10,000, and Cofek was to receive $100 per day, not to exceed $4700.
 
 
 13
 The trial record contains no evidence of a formal exercise by Honeywell of its option to extend purchase order BX64040 beyond the first year, which ran out on June 11, 1974. However, a series of five supplemental purchase orders, all keyed to BX64040 and the last dated August 23, 1974, served to increase the funding made available by Honeywell to Geis and Cofek for LSIS consulting services. Thus it appears that the parties regarded the consulting services agreement as remaining in effect beyond June 11.
 
 
 14
 The parties continued to negotiate during the life of the consulting service agreement. A time came in November 1973 when Cofek signed on behalf of Geisco a proposed licensing agreement which identified "Geisco Associates," a partnership comprised of Geis and Cofek, as the licensor and Honeywell as the licensee of certain "laser scanning inspection systems." In that agreement, Geisco Associates undertook to grant Honeywell a world-wide, exclusive license "to make, have made, use, lease, and sell LSIS and parts thereof." A schedule of royalties to be paid by Honeywell, with minimum royalty schedules per calendar year, was set forth. The leasing agreement also provided for termination by either party at its option if the other party continued in default of any condition or covenant for sixty (60) days after notice thereof. It is common ground that, while Cofek signed this proposed agreement on behalf of Geisco Associates, the agreement was never signed by Honeywell.
 
 
 15
 The events precipitating this suit began on August 28, 1974 when Lincoln Klabo, the marketing director of Honeywell Radiation Center, summoned Geis to his office and gave him the unwelcome news that Honeywell had decided to terminate the LSIS project. Geis immediately responded that Honeywell could not do so because of the terms of the licensing agreement. Klabo responded that Honeywell had instructed him to terminate the project, and that was what he was going to do.
 
 
 16
 On August 29, 1974, Geis met with Sheldon Busansky, the general manager of Honeywell Radiation Center. Busansky gave Geis a letter dated August 29, 1974, on Honeywell stationery, addressed to Geis as president of Geisco. Since this letter is the document upon which the defense of accord and satisfaction is posited, we quote it in full:
 
 
 17
 "James D. Geis, President
 
 GEISCO
 128 Pleasant Drive
 Cheshire, Conn. 07410
 Dear Jim:
 
 18
 In light of the corporate decision not to proceed with the LSIS Project, this is your notification of termination of all agreements between Honeywell and GEISCO effective 31 August 1974. We will, of course, honor the terms of the nondisclosure of information agreements.
 
 
 19
 As recognition of our original intent to participate in a long term relationship we are offering you the 60 day termination notice which was in the licensing agreement you signed earlier. The termination compensation will be in the form of a lump sum payment of $9,300 covering yourself and Henry Cofek for the 60 day period.
 
 
 20
 No expenses beyond 31 August will be paid by Honeywell.
 
 
 21
 Sincerely yours,
 
 
 22
 Sheldon Busansky"
 
 
 23
 Geis, upon receiving this letter, stated again that the licensing agreement foreclosed Honeywell from terminating the project in this manner, but Busansky responded: "Look, let's stop arguing about this. We are terminating this. You can either take the check or not take the check."
 
 
 24
 Geis thereupon signed his name opposite the word "Accepted" in the lower left hand corner of the August 29, 1974 letter. About a week later, he picked up a Honeywell check payable to Geisco in the amount of $9,300, the payment referred to in the letter, and deposited it in a Geisco bank account. Thereafter all Geisco files were removed from Honeywell's premises.
 
 
 25
 In May, 1976, appellants brought suit against Honeywell, asserting claims for wrongful termination of the licensing agreement, Honeywell's failure to use its best marketing efforts under the agreement, and fraudulent inducement. Trial was to a jury.
 
 
 26
 When evidence of the August 29, 1974 letter and the $9,300 payment had been developed, Judge Eginton invited from Honeywell and granted a motion for a directed verdict on the basis of accord and satisfaction. The jury was dismissed, and judgment entered dismissing the complaint. This appeal followed.[1]
 
 II.
 
 27
 Accord and satisfaction is a legal rule of repose. Available as a defense in appropriate circumstances, its policy is to bar further litigation if the parties agreed to satisfy all existing claims by means of a substituted performance. To establish the defense, "the Court must find (i) the parties agreed that the transactions in question were to constitute an accord and satisfaction, and (ii) the performance rendered by defendant was sufficient consideration for a discharge." Swanson v. United-Greenfield Corp., 239 F.Supp. 299, 303-304 (D.Conn.1965), per Timbers, D.J. The requisite agreement is not foreclosed by the plaintiff's unexpressed, subjective understanding; agreement in law arises if "what was done by the defendant ... 'made it unreasonable for plaintiff not to understand' " that defendant's performance "was offered to him as full satisfaction of any claim he might have" against defendant. Swanson, supra, at 304, quoting Corbin, Contracts § 1277, at 117-118 (1962). As to the sufficiency of the consideration, an accord and satisfaction is supported if "the payments tendered by the (defendant) were in excess of any amount then owing to plaintiff," Swanson at 304-305 (emphasis added). Where these factors appear, plaintiff may not accept the defendant's substituted performance and then sue on his original claims.
 
 
 28
 The district court correctly held that accord and satisfaction barred appellants' claims. The issue is whether Geis and Cofek could have formed a reasonable understanding that Honeywell's $9,300 payment, tendered on August 29, 1974, was anything other than an offer in full satisfaction of all their claims. We hold they could not. Honeywell's letter of August 29 gave notice "of termination of all agreements between Honeywell and GEISCO effective 31 August 1974." The only continuing obligation Honeywell recognized was to "honor the terms of the nondisclosure of information agreements." The $9,300 payment proposed by the August 29 letter was clearly ex gratia in Honeywell's view, offered "(a)s recognition of our original intent to participate in a long term relationship." Honeywell manifested that original intent in its letter to Geisco of December 8, 1972-"it is our intent to negotiate a mutually satisfactory agreement ... which will delineate the long term relationship between Honeywell and GEISCO"-but Honeywell never executed the licensing agreement signed by Cofek on behalf of Geisco Associates.
 
 
 29
 At one point in his judgment, Judge Eginton expressed the view that Honeywell "recognized" in the August 29, 1974 letter that the unsigned licensing agreement "was in full force and effect."[2] Both parties attack that observation: Honeywell as erroneous, because of its contention, never abandoned during the litigation, that the statute of frauds barred enforcement of the licensing agreement absent Honeywell's signature;[3] Geisco as premature, because the district court terminated the trial before evidence had been adduced which might take the contract out of the statute.[4]
 
 
 30
 If in fact the district judge meant to say that Honeywell felt itself bound by the licensing agreement, we could not share his perception. But that meaning is not entirely clear from the record; in giving judgment, Judge Eginton also said:
 
 
 31
 "But I find that this letter (the letter of August 29, 1974) is a careful way for Honeywell to say that 'If GEISCO considers this Licensing Agreement to be effective, then we're going to terminate under the conditions of the Licensing Agreement.'
 
 
 32
 "And what they have done was to pay obeisance, as they had to, to the termination clause, Article 9, and that termination clause since it would continue for sixty days, would mean that, in effect, compensation under that agreement would have to continue for sixty days.
 
 
 33
 "And then, naturally, you turn to Article 13 and you incorporate the provisions of 64040 and you pay pursuant to that requirement." A. 379 (emphasis added).[5]
 
 
 34
 On that analysis, Honeywell did no more than recognize a possible claim by Geisco to which Honeywell did not necessarily accede. Indeed, we believe that is the only interpretation that can reasonably be placed upon Honeywell's statement in the August 29 letter:
 
 
 35
 "As recognition of our original intent to participate in a long term relationship we are offering you the 60 day termination notice which was in the licensing agreement you signed earlier."
 
 
 36
 By that language Honeywell does not express its recognition of an intent to contract, later implemented in binding form. It does no more than recognize Honeywell's original intent, leading to a contract proposed by Geisco and signed on behalf of Geisco, but never signed by Honeywell.
 
 
 37
 In short, we read Honeywell's letter of August 29, 1974 as saying in substance and effect:
 
 
 38
 "Our relationship, whatever it is, is at an end; we will not disclose any confidential information; as recognition of our good faith we are offering you $9,300 without requiring you to perform services, that amount being chosen because it was the amount that would have been payable if you had rendered services under an agreement which you (but we never) signed."
 
 
 39
 The $9,300 lump sum payment offered to appellants could, on no theory, be regarded as an amount "then owing" to appellants, Swanson, supra.[6] Appellants were not obliged to signify their acceptance of the offer set forth in the August 29 letter, or to cash the $9,300 check; they could have spurned both and pressed their claims. But appellants cannot reasonably be heard to say that they did not understand Honeywell's offer was in full settlement of any claims they might have. It follows that the defense of accord and satisfaction was made out as a matter of law, and the district court acted properly in withdrawing the case from the jury and directing the entry of judgment dismissing the complaint.
 
 
 40
 No. 81-7530 is affirmed. The cross appeal in No. 81-7550 is dismissed as moot.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The rather complicated procedural history of this case, involving the denial of appellants' motion to amend the complaint, the exclusion of certain evidence at trial, and the denial of appellee's motion for summary judgment, gave rise to additional questions raised on the appeal and cross-appeal. We need consider none of these questions, since resolution of the accord and satisfaction issue renders them moot
 
 
 [2]
 A-329
 
 
 [3]
 Honeywell had moved for summary judgment on the ground, inter alia, that since Connecticut was the place of appellants' contemplated performance under the licensing agreement, Connecticut law governed its validity, and that since the agreement required performance for fixed periods longer than one year it was unenforceable under Conn.Gen.Stat. § 52-550, which provides in part:
 "No civil action shall be maintained upon ... any agreement that is not to be performed within one year from the making thereof, unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent...."
 When the district court expressed the view that Honeywell recognized the binding effect of the licensing agreement, counsel took prompt exception. A-330.
 
 
 [4]
 Appellants' reply brief at 24-25
 
 
 [5]
 Article 9 of the proposed licensing agreement provided:
 "Either party at its option may terminate this Agreement if the other party continues in default with respect to the performance of any conditions or covenants herein contained for sixty (60) days after a notice in writing requiring it to comply with such covenant or condition. Termination of this Agreement will not, however, relieve either party from the performance of the obligations under this Agreement which have accrued prior to the date of such termination."
 Article 13 provided:
 "During the first five (5) years of this Agreement, as LICENSEE from time to time requests, LICENSOR will make available LICENSEE the services of GEIS and COFEK, for discussions relating to Technical Information and to assist LICENSEE in the design, development, manufacture and promotion of LSIS and parts thereof. Charges for the services of GEIS and COFEK will be billed at current rates in accordance with normal billing procedures all as agreed from time to time by the parties. During the first year of this Agreement, the rates and billing procedures will be as specified in the Honeywell Purchase Order BX 64040, attached as Appendix A to this Agreement. It is agreed that said Purchase Order of Appendix A will become effective upon execution of this Agreement."
 
 
 [6]
 Article 9 of the proposed licensing agreement does not provide for 60 days' compensation in the event of termination under its provisions; the 60 day period referred to represents that time within which a party may cure a noticed default to avoid termination. There is no evidence that Honeywell purported to give a written notice of default and demand for compliance under Article 9 of the licensing agreement; quite clearly Honeywell regarded itself as invoking the immediate termination provision of Purchase Order BX64040. That purchase order does not contemplate lump sum payments of this nature