## B & B BAIL BONDS AGENCY OF CONNECTICUT, INC. *v.* JOHN M. BAILEY, CHIEF STATE'S ATTORNEY
### (SC 16188)

McDonald, C. J., and Borden, Norcott, Katz and Palmer, Js.*

Argued October 31, 2000—officially released May 15, 2001

*John W. Callahan*, for the appellant (plaintiff in error).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *David Kutzner*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (defendant in error).

*Opinion*

MCDONALD, C. J. The sole issue in this writ of error is whether the trial court improperly denied the motions

---

* The listing of justices reflects their senority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

of the plaintiff in error, B & B Bail Bonds Agency of Connecticut, Inc. (B & B), for release from bond and for rebate from bond forfeiture. We answer that question in the negative.

The undisputed facts relevant to this claim are these: On December 12, 1996, Ralston Salmon, a Jamaican national, was arrested and charged with violations of General Statutes § 21a-279 (a), illegal possession of a narcotic substance, General Statutes § 21a-277 (a), illegal manufacture, distribution or sale of a narcotic substance, and General Statutes § 21a-279 (c), illegal possession of less than four ounces of a cannabis-type substance. Thereafter, B & B executed a $150,000 surety bond to secure Salmon's release. Salmon was released, but on January 6, 1997, he failed to appear in court as was required as a condition of his release on the bond. The trial court ordered the entire bond forfeited pursuant to General Statutes (Rev. to 1997) § 54-65a.[1] The

---

[1] General Statutes (Rev. to 1997) § 54-65a provides: "(a) Whenever an arrested person is released upon his execution of a bond with surety in an amount of five hundred dollars or more and such bond is ordered forfeited because the principal failed to appear in court as conditioned in such bond, the court shall, at the time of ordering the bond forfeited: (1) Issue a rearrest warrant or a capias directing a proper officer to take the defendant into custody and (2) order a stay of execution upon the forfeiture for six months. When the principal whose bond has been forfeited is returned to custody pursuant to the rearrest warrant or a capias within six months of the date such bond was ordered forfeited, the bond shall be automatically terminated and the surety released and the court shall order new conditions of release for the defendant in accordance with section 54-64a. When the principal whose bond has been forfeited returns to court voluntarily within five business days of the date such bond was ordered forfeited, the court may, in its discretion, and after finding that the defendant's failure to appear was not wilful, vacate the forfeiture order and reinstate the bond. Such stay of execution shall not prevent the issuance of a rearrest warrant or a capias.

"(b) Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate of that portion of the forfeited amount as may be fixed by the court or as may be established by a schedule adopted by rule of the judges of the court."

order of forfeiture was stayed for six months pursuant to § 54-65a (a) to allow B & B to locate Salmon. In the last week of June, 1997, B & B notified the state's attorney that it had located Salmon in Jamaica and that it had sent its agents there in an attempt to return Salmon to Connecticut to face trial. B & B's agents were informed by Jamaican authorities that they would be arrested for kidnapping if they attempted to remove Salmon from Jamaica without a proper extradition warrant. Despite B & B's request, the state's attorney elected not to pursue extradition of Salmon.

B & B then requested an additional week beyond the statutory six month stay of execution of the bond forfeiture, which was to expire on July 7, 1997. The state granted B & B an extension until 9 a.m., July 14, 1997, on the condition that, if B & B did not return Salmon to Connecticut by the end of the extended period, on July 14, 1997, B & B would pay the sum of $75,000 to satisfy forfeiture of the bond.[2] B & B did not return Salmon and thereafter made the $75,000 payment on July 14, 1997. On October 3, 1997, B & B filed motions for release from bond and rebate from bond forfeiture. The trial court denied both of those motions.

B & B then brought this writ of error pursuant to Practice Book § 72-1,[3] alleging that the state's failure to seek extradition of Salmon constituted "good cause" and that, pursuant to Practice Book § 38-23,[4] B & B should be released from its obligation.[5]

---

[2] General Statutes § 51-279b (b) authorizes, but does not compel, the chief state's attorney to compromise and settle forfeited bonds for less than the amount of the bond.

[3] Practice Book § 72-1 (a) provides: "Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court."

[4] Practice Book § 38-23 provides: "Where bail has been posted by a bondsman or other surety, such bondsman or surety shall not be relieved of any obligation upon the bond except with the permission of the judicial authority and for good cause shown."

[5] We note that B & B brought this writ of error more than two weeks after the trial court's ruling, and within two weeks of this court's ruling that

We conclude that there was accord and satisfaction when B & B paid the state $75,000 to compromise the bond forfeiture. See *Blake* v. *Blake,* 211 Conn. 485, 491, 560 A.2d 396 (1989); *County Fire Door Corp.* v. *C.F. Wooding Co.,* 202 Conn. 277, 281–82, 520 A.2d 1028 (1987). This conclusion renders it unnecessary to consider B & B's claim that the trial court abused its discretion in failing to release it from the bond for good cause shown. Accordingly, we conclude that the trial court properly denied B & B's later motions.

"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." (Internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership,* 236 Conn. 750, 764, 674 A.2d 1313 (1996). "An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty." (Internal quotation marks omitted.) *Tolland Enterprises* v. *Scan-Code, Inc.,* 239 Conn. 326, 333, 684 A.2d 1150 (1996). "Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration." (Internal quotation marks omitted.) *Blake* v. *Blake,* supra, 211 Conn. 491. Although

---

B & B had no right to appeal the ruling directly. See *State* v. *Salmon,* 250 Conn. 147, 735 A.2d 333 (1999). We previously have held that "noncompliance with the two week limitation period of [General Statutes] § 52-273 [providing that '[n]o writ of error may be brought in any civil or criminal proceeding, unless allowed and signed within two weeks after the rendition of the judgment or decree complained of'] does not deprive this court of subject matter jurisdiction over a writ of error." *Banks* v. *Thomas,* 241 Conn. 569, 586, 698 A.2d 268 (1997). In the present case, as in *Banks,* the state has suffered no prejudice from the filing delay and, moreover, does not object to our review of the merits of B & B's claims. Accordingly, we will consider those claims.

the case law presents the more usual use of accord and satisfaction as a defense by the debtor against the creditor, it is evident that accord and satisfaction equally applies to both parties. " 'Accord and satisfaction' is a method of discharging a claim whereby the *parties* agree to *give and accept* something other than that which is due in settlement of the claim and to perform the agreement." (Emphasis added.) 1 Am. Jur. 2d, Accord and Satisfaction § 1 (1994). We conclude that, in this case, both the state and B & B are precluded from pursuing any action involving the original, underlying claim. See *May Dept. Stores Co.* v. *International Leasing Corp., Inc.*, 1 F.3d 138, 140 (2d Cir. 1993) (accord and satisfaction bars assertion of original claim; applying New York law); *Geisco, Inc.* v. *Honeywell, Inc.*, 682 F.2d 54, 57 (2d Cir. 1982) (accord and satisfaction bars further litigation); 2 Restatement (Second), Contracts § 281 (1) (1981) (performance of accord and satisfaction discharges original duty); S. Burnham, "A Primer on Accord and Satisfaction," 47 Mont. L. Rev. 1, 7, 20–21 (1986); J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 21-4, pp. 868–69; 17A Am. Jur. 2d, Contracts § 52 (1994).

In this case, the state claimed that B & B owed $150,000. B & B, however, claimed that the state had an obligation to extradite Salmon. B & B negotiated with the state for an extension of the stay of the execution of the bond beyond the statutory extension. If Salmon were not returned at that time, B & B agreed to pay $75,000 to the state, in B & B's own words, as a "compromise" of the bond forfeiture. Such a compromise becomes an executed contract that bars any further claim by B & B or the state. *Blake* v. *Blake,* supra, 211 Conn. 491.

Under the doctrine of accord and satisfaction, the state is barred from collecting the sum of $150,000 after accepting the negotiated settlement. B & B also is barred

from further claims as to the $75,000 that it paid. Under these circumstances, the trial court acted properly in denying B & B's motions.

The writ of error is dismissed.

In this opinion the other justices concurred.