[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Capitol Light and Supply Co. (CLS) sues to collect an account balance from one of its customers, the defendant MAKLARI Electric Corp. (MAKLARI Electric). Interest as well as attorney fees are also claimed. MAKLARI Electric disputes the account balance claimed by CLS, claims a set-off and disputes the amount and/or entitlement to the attorney fees and interest being claimed by CLS. MAKLARI Electric's challenge to CLS' entitlement to attorney's fees and interest is grounded on a claim of breach by CLS of the covenant of good faith and fair dealing, an implicit part of the account agreement between the parties. The entitlement and amount of the attorney fees is also disputed because it is claimed that various portions of the attorney's fees are not reasonably chargeable against MAKLARI Electric.
CLS claims the following: $36,999.86, unpaid principal amounts of invoices as of August 10, 1999. Credit for payment of $34,221.26, from the application of garnished funds on December 21, 1999; interest, $2,778.60; attorney fees $15,835.00; all totaling $21,392.20.
MAKLARI Electric would have the CLS claim addressed as follows: from the CLS claim for unpaid principal amount of invoices as of August 10, 1999 of $36,999.86, deduct a $2,000 balance of credit for overbillings by CLS on various MAKLARI Electric projects which was never given by CLS; deduct also a $1,119.55 credit for additional Middlebrook School light fixtures that should not have been billed to MAKLARI Electric; deduct a $593.60 credit for a June 4, 1999 invoice for material MAKLARI Electric claims it never ordered or received. This would leave an account balance of $33,286.71 to which would be applied the $34,221.26 credit for payment from the garnished funds. This would leave a balance of $934.55 overpaid by MAKLARI Electric to CLS.
The facts are as follows: CLS and MAKLARI Electric have been doing business together for a number of years. Maklari had what he considered to be a favored relationship with the Stratford Branch of CLS. At that branch his salesperson was Frank Szabo and the branch manager was Todd Gallo. Maklari knew them both well. This relationship began to unravel in 1998 over a dispute involving CLS overbilling on several projects Maklari was working on. There were meetings between Maklari and Gallo dealing with these overbillings which resulted in an agreement under which CLS would issue an immediate credit of $5,709.76 and that a $2,000 credit CT Page 8830 would be applied to the next substantial job between the parties. As it so happened the substantial job which had been expected did not come through so that the $2,000 credit remained unapplied. Maklari kept asking about the status of the $2,000 and asking that it be applied to his account balance. This did not happen.
According to Schaefer the credit manager of CLS, it was the custom of the trade to hold on to credits resulting from overbillings and to apply them to the particular account when the balance fell into the 90 day overdue status. When this happened to the MAKLARI account requests for payments were made by CLS. On these occasions Maklari asked about the status of his $2,000 credit. In July of 1999 in an effort to try to resolve the impasse between CLS and MAKLARI, Maklari called Schaefer from his car on his cell phone. About 4 minutes into the call Maklari's phone went dead. Schaefer thought Maklari had hung up on him and when Maklari redialed the number he was told Schaefer was not available. Shortly thereafter CLS brought suit.
An account statement was run as of August 10, 1999. This was an exhibit to Schaefer's affidavit in support of the ex parte prejudgment remedy which Attorney Miller issued on commencement of the action. The August 10, 1999, account statement showed credits applied to the MAKLARI Electric account on July 30, 1999 and August 4, 1999. Schaefer opined that he may have asked the branch office to "clean up the account" before litigation was commenced, as that was what he might commonly do prior to commencing litigation. Thus while Maklari is trying to determine what he owes CLS, CLS without informing him as to the amount brings the instant action.
In view of the fact that CLS followed the practice of reserving credits owed customers as a customary practice in the industry, at a minimum, the $2,000 credit issue should have been addressed before initiating litigation. For CLS to take the position that this money is no longer owed MAKLARI because he did not bring a job to CLS against which this amount could be offset and that this was a condition of giving him this credit flies in the face of the documentation worked out between Gallo and Maklari. The computations they came up with based on the invoices CLS had issued for the projects as of their February 26, 1998, meeting showed MAKLARI Electric had been overbilled by $2,942.15 for sales tax and $8,264.47 for material. Gallo told Maklari at that meeting that CLS would issue immediate credit for the sales tax overbilling and for all but $2,000 of the material overbilling. Gallo asked Maklari if he would wait on the last $2,000 of the credit due for the overbilling and take it as a credit on an order for the switch gear for a building known as Corporate IV. CLS could not supply the switch gear for Corporate IV because it could not meet the delivery date requirements for the project. CT Page 8831
The CLS claim of an accord and satisfaction is not supported by the evidence. "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and creditor to negotiate a contract of award to settle the outstanding claim (citation omitted)." BB Bail Bonds Agency ofConnecticut, Inc. v. Bailey, 256 Conn. 209, 212 (2001). In the instant case there was no dispute as to the amount of overbilling. CLS admitted there had been overbilling, and that $2,000 remained to be credited on these overbills.
In addition to the $2,000 credit outstanding there was also a $1,119.55 credit involving the Middlebrook School project. Gallo admitted that the $1,119.55 should not have been billed to MAKLARI Electric and that MAKLARI was entitled to a credit or refund for that amount.
A third credit claimed by MAKLARI was in the amount of $593.60. That invoice dated June 4, 1999 was specified for fixtures in the Corporate IV building. The relationship between MAKLARI and CLS had broken down with CLS in April 1999. From that time on MAKLARI no longer made purchases from CLS. The June 4, 1999 invoice involved fixtures by a manufacturer which MAKLARI did not use on the Corporate IV building. CLS did not have a delivery ticket signed for by anyone for the receipt of the June 4th material. Though from time to time in the past delivery had been made to MAKLARI without someone signing for their receipt, the usual practice was for CLS to get a signed receipt for the delivery.
Allowing MAKLARI the $2,000 credit, the $1,119.55 credit and the $593.60 credit, the proper account balance as of August 10, 1999, would have been $3,713.15 less than the $36,999.86 claimed by CLS. The proper balance would have been $33,286.71.
The complaint in paragraph 8 recites that demand was made upon the defendant for payment of said sum $36,999.86 due, and that the defendant has wrongfully failed and refused to make any payments. This demand letter was dated August 10, 1999. On August 10, 1999 the Hudson United Bank was garnished for attachment of all accounts of MAKLARI Electric Corp. On August 11, 1999, MAKLARI accounts at United Bank were attached. Also on August 11, 1999, MAKLARI Electric Corp. was served with notice of ex parte prejudgment remedy/claim for hearing to dissolve or modify, summons, affidavit in support of prejudgment remedy, writ, summons and directions for attachment/garnishment complaint, statement of amount in demand.
Service charges amounting to $3,345.67 were imposed by CLS. They cover the period ending August 25, 1999, September 25, 1999, October 25, 1999 CT Page 8832 and November 25, 1999 at the rate of $555.01 per month for a total of $2,220.04. After the $34,221.26 payment was made the service charges dropped to $41.69 per month, which comes to 1-1/2% per month on a balance of $2,779. The $41.69 for the 12 months ending September 25, 2001 totals $500.28, a balance of $625.35 in additional service charges remain to make up the balance of $3,345.67 which at the rate of $41.69 per month would have to cover 15 months beyond September 25, 2001 or through December 25, 2002.
Attorney fees are claimed by CLS in the amount of $15,160. These, can be divided into several blocks of time. The first, from August 10, 1999 to August 19, 1999 which consists of 6.5 hours of Attorney Miller's time and 3.2 hours of paralegal time. This time was spent in bringing the lawsuit and working with Hudson United Bank on the garnishment order. These hours were billed at $165 per hour for a total of $1,072.50 for attorney time and $208 in paralegal time.
A total of 14.5 hours were billed for time spent by Attorney Miller in looking into the billing disputes which Maklaris detailed in an August 20, 1999 letter to Attorney Miller and for which Maklaris had been trying to get answers to before CLS initiated the instant action. At this time Attorney Miller charged $185 per hour for a total of $2,682.50.
A third block of time from January 26, 2000 to March 3, 2000 was spent in preparation for the prejudgment remedy hearing which did not go forward. The hours billed were 13.5 at $165 per hour for a total of $2,227.50. With the December 21, 1999 payment of $34,221 the remaining unpaid principal balance on the account was $2,000 (the $2,000 credit CLS claimed was not due to MAKLARIS). The garnishment of $22,000 remained on the MAKLARIS account. It was this garnishment that Attorney Miller between January 26, 2000 to March 3, 2000 was preparing to defend.
The defendant pleads in special defense that the defendant withheld payment on its account because of a disputed account balance and the plaintiffs failure to address the disputed items in a good faith manner; that the plaintiff either required the defendant to pay the full amount of its account as a condition to receiving any refund or credits of overpayments due the defendant, or required the defendant to make additional substantial purchases far in excess of credits due as a pre-condition of refunding or crediting improper over-billings previously made by the plaintiff against the defendant; and that the above conduct constitutes a breach of the plaintiffs contractual obligation to deal with the defendant in good faith, and the plaintiff is therefore not entitled to collect "service charges" or costs of collection.
"Connecticut has long recognized the doctrine of good faith and fair CT Page 8833 dealing in the performance of contractual obligations. Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 567, 479 A.2d 781 (1984)." CiticorpMortgage, Inc. v. Upton, 42 Conn. Sup. 302, 304 (1992). "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. (citation omitted)." Id 304. In CiticorpMortgage, Inc., supra, the court disallowed "excessive" interest charges, penalties and costs being charged to the defendant in an action for a deficiency judgment in a mortgage foreclosure case. In that case the court found that plaintiffs failure to respond to defendant's request to take title to the property was both a breach of good faith and fair dealing and inequitable conduct on its part, that court disallowed certain charges and interest.
In the instant case the Plaintiff CLS has in place a system of carrying over credits due its customers. The defendant was one such customer. In computing the service for these customers charges CLS did not allow for the credits being held in reserve. Therefore the service charges were always higher than they should have been for these customers with reserved credits and, this was true of the service charges being billed to the Plaintiff over time. When Maklari got his statement on August 10, 1999, the balance reflected for service charges on that statement was higher than it should have been because of how the credits were customarily handled.
The fee being claimed for Attorney Miller's services falls into distinct blocks of time. One block of time totaling 14.5 hours totaling $2,682.50 involved a response to a letter from Maklari which inquired of various billing disputes and a claim by Maklari against CLS involving tortious interference with a contractual relationship (the Scinto matter). The billing disputes involved the same credits Maklari was trying to get CLS to address prior to the instant litigation. A two page letter in response went out to Maklari on August 30, 2002.
Another 13.5 hours between January 26, 2000 to March 3, 2000 were spent in preparing for a PJR hearing which did not go forward. On December 21, 1999 $34,221.00 was taken out of MAKLARI Electrics bank and paid over to CLS, leaving a balance of a little over $2,000 in the account. There still remained on the account $22,000 under garnishment. The time listed as incurred relating to the prejudgment remedy hearing was for the purpose of sustaining the $22,000 remaining under garnishment to secure what was even by CLS's calculations, no more than $2,000 in an unpaid account principal. At $165 an hour the 13.5 hours of Attorney Miller's time is listed as $2,227.50.
This court concludes from the facts found that the plaintiff failed to address the disputed items in a good faith manner. Outstanding credits, CT Page 8834 not including the $2,000 credit, were factored into the MARKARI account on August 10, 1999 the same day his funds were garnished at the Hudson United Bank. Service charges were computed on account balances which did not reflect credits due. Attorney fees are being requested for the same inquiries CLS should have responded to before bringing suit. A PJR hearing was being pursued after the account had been paid down to a little over $2,000 to justify a continued garnishment of $22,000.
The court reduces the claimed debt of $36,999.86[1] by $2,000 leaving a balance of $34,999.86 against which the court grants a set off of $1,119.55 and $543.18. Accordingly the amount owed by MAKLARI Electric to CLS is found to be $33,286.71.
For the reasons stated no service charges are allowed. Attorney fees in the amount of $5,000 are awarded.
Judgment may enter in favor of Capitol Light Supply Co. in the amount of $33,286.71 together with attorneys fees in the amount of $5,000.
 ___________________, J. Hennessey