[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present case arises out of a mortgage that was subsequently modified and then released. Mauro and Janet Troetti, the plaintiffs, were the mortgagors on the property located at 27 Green Pasture Road, Bethel (the property). First Nationwide Mortgage Corporation, the defendant, was the mortgagee on the property.
The substituted complaint alleges that the property was first mortgaged on August 20, 1987. On May 12, 1998, the mortgage was modified with a principal balance of $124,115.34. The principal and interest were allegedly set to be $160,123.74, accrued over forty-three months.
On November 12, 1999, the plaintiffs obtained financing to pay off the mortgage. Before the refinancing, however, the plaintiffs allege that the defendant wrongfully demanded $173,549, and allegedly refused to release the mortgage without payment of the higher price.
The first count of the substituted complaint alleges breach of contract. The second count alleges conversion. The third count alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA).
On April 23, 2002, the defendant filed its motion for summary judgment on all three counts. Attached to its motion is a copy of the original mortgage, a copy of the loan agreement signed by the plaintiffs, a copy of the loan modification agreement, a payoff calculation dated November 2, 1999, several admissions from the plaintiffs, several documents produced by the plaintiffs, and some interrogatories answered by the plaintiffs. The defendant has also separately filed an affidavit from Karen B. Morton, the defendant's loss mitigation supervisor, and a copy of the plaintiffs' payment history. In objection, the plaintiffs have filed a copy of the mortgage, a copy of the mortgage modification agreement, a letter from Mr. Troetti to the defendant dated November 4, 1999, a letter from the defendant to the plaintiffs dated August 4, 1998, and an affidavit from Mr. Troetti. CT Page 12134
 DISCUSSION
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Miller v. United Technologies Corp., 233 Conn. 732,751-52, 660 A.2d 810 (1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine [if] any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000).
 I
The defendant argues that no genuine issue of material fact exists as to the first count, which alleges breach of contract, because the defendant and the plaintiffs entered into an accord and satisfaction. The plaintiffs, however, claim that there was no accord and satisfaction because they tendered the money to the defendant under duress.
The dispute at the center of the present case is whether the defendant forced the plaintiffs to pay an extra $10,000. The defendant claims that the $10,000 charge derives mostly from an "escrow account overdraft" coupled with several charges and fees.[1] The plaintiffs argue that the $10,000 represents a wrongful charge extracted from them.
At the time of the loan modification, the unpaid principal balance of the mortgage was $160,123.74. The defendant claims an additional amount of funds predicated upon an escrow account overdraft payment was also CT Page 12135 due. The court shall first determine whether the defendant has shown this amount was properly charged to the plaintiffs.
The loan modification, submitted by both parties, indicates that "[t]he Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument." The mortgage provides, in a section entitled "uniform covenants," that the plaintiffs would be obligated to pay to the defendant funds, each month, that would be applied to payment of taxes and assessments, yearly hazard insurance premiums and yearly mortgage insurance premiums, called collectively the escrow items. These payments would be placed in an escrow account and applied only to the escrow items.
The agreement also provides that "[i]f the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender." Thus, if the escrow items were greater than the amount of the escrow fund, the borrower would be liable to the lender. for those amounts.
Submitted in support of its motion, the defendant has provided the court with a payment history on the plaintiffs' mortgage supported by Morton's affidavit. The payment history is relevant because it shows that the plaintiffs' escrow account has had a deficiency since 1992. The ending balance of the escrow overdraft, as indicated by the payment history sheet, was $8948.97. The history also shows amounts charged for fees for non-sufficient funds, late charges and a fax fee.
This documentation demonstrates that the proper payoff amount was the $173,787.61 claimed by the defendant. It also shows that, under the agreements signed by the plaintiffs, that the plaintiffs were obligated to pay back the escrow account overdrafts.[2]
The defendant sent a letter stating that the potential payoff amount would be $173,787.61. The plaintiff sent a letter to the defendant contesting this amount. On November 19, 1999, however, the plaintiff tendered a check in the amount of $173,549.06.[3] The defendant claims that this check constitutes an accord and satisfaction of the debt.
"Accord and satisfaction is a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in CT Page 12136 settlement of the claim and to perform the agreement." (Internal quotation marks omitted.) BB Bail Bonds Agency of Connecticut, Inc. v.Bailey, 256 Conn. 209, 213, 770 A.2d 960 (2001). "To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim. . . . The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted." (Citations omitted; internal quotation marks omitted.) Munroe v. Emhart Corp., 46 Conn. App. 37, 42-43,699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997).
The defendant has shown that a good faith dispute existed as to the debt. Once the payoff figure was disclosed to the plaintiffs, Mauro Troetti disputed that the proper amount of bankruptcy trustee payments applied to the loan. Also, Mr. Troetti sent a letter to the defendant disputing the re-payment of the escrow overdraft.
The plaintiffs argue, however, that a meeting of the minds did not exist. They claim that the defendant coerced them into payment through duress.
"For a party to demonstrate duress, it must prove [1] a wrongful act or threat [21 that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim." (Internal quotation marks omitted.) Noble v.White, 66 Conn. App. 54, 59, 783 A.2d 1145 (2001). Troetti's affidavit states that "[b]ecause of the threat by First Nationwide Mortgage Corporation that it would not release the mortgage unless it received the sum of $173,787.61, I instructed my closing attorney to tender a check in that amount."[4]
In order to defeat the claim of duress, the defendant would have to show that it did not commit a wrongful act or threat against the plaintiffs. The documentation shows that the plaintiffs legitimately owed the amount of the escrow overdraft. The plaintiffs, on the other hand, have not established a genuine issue of material fact on this issue. They have provided documentation that they disputed the amount, but have not supplied to the court with any documentation as to why they did not owe the amount. Moreover, the affidavit does not establish that they did not legitimately owe this amount, only that the plaintiffs had previously reached an understanding that the payoff amount was going to be $160,123.74 and not the higher amount. For the defendant to have caused duress, it would have had to have made a wrongful threat. Nothing within CT Page 12137 the documentation suggests that it made a wrongful demand upon the plaintiffs.
Accordingly, because the defendant has shown that the plaintiffs disputed the debt, but then tendered a check to pay the debt, evincing a meeting of the minds, the defendant has shown no genuine issue of material fact exists as to the first count because there was an accord and satisfaction. The plaintiffs have failed to show that a genuine issue of material fact exists because the plaintiffs have failed to demonstrate a wrongful act or threat causing duress.
 II
The second count alleges that the defendant converted funds by wrongly demanding an extra $10,000 from the plaintiffs in order to pay off the mortgage. The defendant argues that there is no genuine issue of material fact and that it is entitled to judgment as a matter law as to the conversion claim because it has shown that the payoff amount was based upon a legitimate debt.
"Conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 169, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). "Conversion has been defined as an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. . . . There may be a conversion by a wrongful taking, by an illegal assumption of ownership, by an illegal user or misuse, or by any other form of possession wrongfully obtained. Furthermore, a wrongful detention, even though possession was rightfully obtained, may constitute conversion." (Citation omitted; internal quotation marks omitted.) Bruneau v. W.W.Transportation Co., 138 Conn. 179, 182-83, 82 A.2d 923 (1951).
A cause of action of conversion clearly depends upon a wrongful act depriving a plaintiff of rightful ownership. As discussed in Part I of this opinion, the defendant has shown that the debt is based upon the mortgage agreement. The defendant has also shown that it has advanced the sums for escrow overdrafts legitimately and that it could hold the plaintiffs responsible for re-paying the overdraft funds.
In opposition, the plaintiffs cite Home Loan Investment Bank v.CT Page 12138Sebjan, Superior Court, judicial district of Danbury, Docket No. 329603 (July 24, 2000, Moraghan, J.). In Sebjan, the court denied summary judgment brought by a bank when both the plaintiff and the bank claimed admitted an overcharge of a payoff amount. The present case differs fromSebjan. In the present case, the defendant has shown that the plaintiffs legitimately owed it the escrow overdraft funds and late fees, as shown in the payment history it submitted. Unlike in Sebjan, the defendant has shown that it did not over charge the plaintiffs.
The defendant has shown that there is no genuine issue of material fact as to the conversion because it has shown that the debt was legitimate, defeating any claim of a wrongful taking. The plaintiff has failed to create a genuine issue of material fact. Accordingly, the defendant's motion, as to count two, must be granted.
 III
The third and final count of the plaintiff s complaint alleges a CUTPA violation committed by the defendant. The plaintiffs allege that the defendant violated CUTPA by converting their funds.
As discussed in Part II of this opinion, the defendant has demonstrated that no genuine issue of material fact exists as to the issue. of conversion. Accordingly, because the third count depends upon conversion, no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law.
 CONCLUSION
For the reasons herein stated, the court grants the motion for summary judgment as to the first, second and third counts.
 ___________________ White, J.