TALCOTT H. RUSSELL, RECEIVER, *vs.* WILLIS BRISTOL AND ANOTHER, EXECUTORS.

The charter of a life insurance company authorized the trustees of the company at any time at their discretion to establish a guaranty capital, not to exceed $100,000, to be paid in cash, notes, or approved securities, to be applied, if necessary, to the payment of its debts; if not used, to be returned, and if used, to be refunded with interest from its first surplus receipts. The company was afterwards declared by the insurance commissioner to be insolvent to the extent of $48,000, and forbidden to issue policies unless the deficiency was made good. The trustees thereupon procured from the stockholders a subscription of $75,000 as a guarantee fund under the charter, the subscription providing that the subscribers should severally transfer to the company approved securities to the amount of their subscriptions, the income from them to be paid to the "owners thereof;" the company to pay six per cent. for the use of the securities, which were to be used only when the resources of the company were exhausted, and if not used to be returned at the end of three years; a receipt being given to each subscriber for the securities as "payment" of his subscription. The insurance commissioner accepted this guarantee fund as supplying the deficiency in the capital and allowed the company to go on. *B* subscribed $10,000 to the fund and transferred to the company railroad stock to that amount. He afterwards died, and at the end of the three years the stock was re-transferred by the company to his executors, and by them afterwards distributed as a part of his estate under an order of the probate court. The insurance company was subsequently judicially declared insolvent, and went into the hands of a receiver, who made demand on the executor for the sum of $10,000, and also for the securities. Held—

1. That *B's* obligation was for the payment of his subscription in money, and was to be regarded as secured only, and not paid, by the transfer of the stock.

2. That the right of action did not accrue when the stock was transferred by the company to the executors, but when demand was made on the executors by the receiver for the payment of the subscription.

BILL IN EQUITY for the transfer of certain stocks, an account, the payment of money, and an injunction; brought to the Superior Court. Facts found by a committee and case reserved for advice. The case is fully stated in the opinion.

*S. E. Baldwin* and *T. H. Russell*, for the petitioner.

*J. S. Beach* and *H. Stoddard*, for the respondents.

PARDEE, J.   The legislature incorporated the American Mutual Life Insurance Company in 1847, with power to insure lives. The charter and the amendments thereto provided that its trustees might at their discretion at any time establish, and from time to time re-establish, the whole or any part of a guarantee capital, not to exceed the sum of $100,000 at any one time, and might require the same to be paid in cash, notes, or approved securities; the same to be used, assessed or negotiated if necessary for the payment of its debts; if not used, to be refunded with interest; if used, to be refunded with interest from its first surplus receipts.

In 1872 the insurance commissioner declared the company to be insolvent to the extent of $48,678, and forbade it to issue policies unless the deficiency should be made good.

Availing themselves of the provisions of the charter, its trustees on March 17th, 1873, resolved to establish a guarantee fund to the extent of $75,000, for the purpose of supplying this deficiency, and thereby obtaining permission to continue business.

On that day Willis Bristol was a shareholder in the company and one of its trustees; was its treasurer, knew of its insolvency, participated in the vote to establish the guarantee capital, and had knowledge of the purpose for which it was established. To this capital he subscribed the sum of ten thousand dollars, signing with others the following form of subscription:—

" Whereas, the board of trustees of the American Mutual Life Insurance Company have resolved to establish a

guarantee capital amounting to seventy-five thousand dollars, under the provisions of the charter of said company and the amendments thereto, and to pay for the use of the same as follows: three per cent. each on the first day of July and the first day of January in each year, for the term of three years:—And whereas it is agreed that said guarantee capital shall not be used or resorted to unless all the resources of said company are exhausted, and that whatever income is derived from the bonds, stocks or mortgages, or other securities transferred to said company as a part of said capital, shall be, when collected by the treasurer of said company, paid to the owners thereof, and the securities be surrendered at the termination of said three years from the 15th day of December, 1872:—Now therefore, we, the undersigned, do hereby subscribe for such amount of said guarantee capital as we respectively set opposite to our names, subject to the terms of said charter and this agreement, and hereby agree to transfer to said company such securities, to the amount of our respective subscriptions, as shall be approved by the board of trustees. And further, we hereby consent that said American Mutual Life Insurance Company may transfer our said securities to the American National Life & Trust Company, whenever said company shall assume the liabilities of the American Mutual Life Insurance Company, as provided in certain special acts of the legislature heretofore passed. Our liability under this subscription shall commence on and terminate three years from said date."

Mr. Bristol transferred to the company two hundred shares of the stock of the Morris & Essex Railroad Company, nearly of the value of $10,000, and took from himself as treasurer an acknowledgment in accordance with the following form, which had been adopted by a vote of the directors:—

"Received, March    1873, from Mr.    in payment of his subscription of    dollars towards a guarantee capital of seventy-five thousand dollars for the American Mutual Life Insurance Company, (of which said

subscription the above is a true copy,) the following securi-
ties, to be used as a part of said guarantee capital, according
to the tenor of said subscription, and for no other purpose;
and all obligation on the part of the subscriber herein
named shall cease at the expiration of three years from the
15th day of December, 1872."

On April 15th, 1873, the American Mutual Life Insurance
Company transferred substantially all its assets and securi-
ties to the American National Life & Trust Company, a
corporation chartered by the legislature of this state.

During his life Mr. Bristol received from the corporation
the dividends declared upon the shares, and annual interest
at the rate of six per cent. upon the sum of $10,000. He
died May 8th, 1875. The defendants, his executors, receiv-
ed from the corporation the dividends and interest subse-
quently accruing. On December 24th, 1875, the treasurer
of the American National Life & Trust Company delivered
to L. S. Hotchkiss, one of the defendants, as executor, the
certificate for the shares which Mr. Bristol had delivered to
the company, with a power of attorney for the transfer;
and in June, 1876, these were distributed under an order of
the probate court to legatees of Mr. Bristol as a part of his
estate.

In 1878 it was judicially determined, upon a proper pro-
ceeding for that purpose, that the American Mutual Life
Insurance Company and the American National Life &
Trust Company were insolvent; the plaintiff was appointed
receiver for both; having duly qualified he made a demand
in February, 1879, upon the defendants substantially in the
following words:—

"Messrs. Leonard S. Hotchkiss and Willis Bristol, execu-
tors of the estate of Willis Bristol, deceased:—Gentlemen—
Please take notice that I have been appointed by the Supe-
rior Court receiver of the American National Life & Trust
Company of New Haven, and that as such receiver I am
authorized to call in and collect all unpaid subscriptions
or instalments thereof due on account of any capital here-
tofore subscribed for the use of said company, and all

subscriptions and securities made or pledged for said capital and thereafter improperly refunded or cancelled by said company, or otherwise remaining unpaid, and bring any necessary suits therefor; and that, in pursuance of the power so vested in me by said court, I hereby call in and demand of the estate of Willis Bristol, deceased, and of you and each of you as executors of said estate, payment of the full amount of subscription of said Bristol to the guarantee capital or fund originally subscribed to the American Mutual Life Insurance Company and afterwards claimed by the American National Life & Trust Company, amounting to ten thousand dollars in all, to be paid to me as such receiver on or before the first day of April, A. D., 1879. I also, as such receiver, demand of you and each of you, as executors of said estate, the immediate return of all securities deposited in connection with such subscription, to wit: two hundred shares of Morris & Essex Railroad stock, and of all other securities left in connection therewith. Said company became insolvent prior to October, 1875, and has since continued so, and said securities and said guarantee capital were thereupon required and are required to meet claims against said company. I enclose herewith, in order to prevent any possible question as to the proper party to make this call upon you, a similar call and demand made in my capacity as receiver of the American Mutual Life Insurance Company. A compliance with this call, or that by me in my capacity as receiver of the American Mutual Life Insurance Company, will be deemed by me a sufficient excuse for non-compliance with the other. I hereby present the said demand as a claim against said estate." (Signed by Mr. Russell as receiver of the American National Life & Trust Company.)

Upon their refusal to comply Mr. Russell brought the present bill in equity, asking that the defendants as executors may be ordered to return to him as receiver of one or both of the named corporations the securities transferred by Mr. Bristol to the American Mutual Life Insurance Company; also to make good any deficiency between the value

thereof and the sum of $10,000; also to pay interest on $10,000, the amount of the subscription made by Mr. Bristol to the guarantee capital, from December 15th, 1875; also to account for all income and profits paid to him upon such securities by either corporation; also that the defendants may be enjoined against any transfer of the securities; concluding with a general prayer for relief.

The case was referred for a finding of facts, and upon the finding has been reserved for our advice as to the decree to be passed.

It is the claim of the defendants, first, that Mr. Bristol, at the time of and by the transfer of the shares to the corporation, discharged himself from all obligations imposed by his contract of subscription; and that if the act of the executors on December 24th, 1875, in taking a re-transfer of the shares furnished the basis for a claim against the estate, it accrued at that date, and consequently was barred by the statute of limitations before the bringing of this suit; second, that they are protected by the statute which transfers the legal liability from executors to legatees in certain cases, when the former have delivered property to the latter under an order of a court of competent jurisdiction.

It is true that the corporation acknowledged itself to have received the two hundred shares of railroad stock from Mr. Bristol "*in payment* of his subscription of $10,000 towards a guarantee capital of $75,000 for the American Mutual Life Insurance Company," but, in the contract of subscription he required the corporation to say, and it did say, that during the three years immediately following that date it would collect and pay over all dividends declared upon those shares to him, "the owner thereof;" he required it to hold them at all times subject to his right to reclaim them by substituting other satisfactory securities; he required of it the payment of six per cent. per annum upon the amount of his subscription for this use of them; required it to ask his consent to the transfer of them to the American National Life & Trust Company on some unnamed day in the future; and required it to re-transfer these specific shares to him at

the end of three years. Looking through form to substance, in legal effect Mr. Bristol agreed to supply additional capital to the extent of $10,000 to the corporation, to be applied to the payment of losses upon policies after the exhaustion of other corporate resources; to supply it as the trustees should call for instalments; and secured the performance of his undertaking by the pledge of shares, of which he was to remain the owner until the trustees should exercise their right to convert them upon his failure to meet their call. With his knowledge and permission the trustees, upon this with other similar agreements, regained from the insurance commissioner the forfeited right to issue policies.

It is quite certain that it was not the expectation of Mr. Bristol to be compelled to pay literally and at once the whole or any part of the sum subscribed by him; that his intent went no farther than to enable the corporation to force payment upon him if its business should prove unprofitable. Therefore the legal effect of the word "payment," in the acknowledgment given by him as treasurer to himself as an individual, is that he had done all that he had agreed to do up to that time; that is, he had so fortified his promise to pay upon call as that the commissioner could legally accept it as capital; the charter authorizing that officer to regard as capital paid, capital promised, protected by approved securities.

The finding is that the American Mutual Life Insurance Company and American National Life & Trust Company both subsequently became insolvent; that the trustees totally neglected their duty to call for the promised capital; that both corporations passed into the keeping of the plaintiff as receiver; and that by order of court he, on February 11th, 1879, officially called for the entire amount of Mr. Bristol's subscription. On that day the liability which had been, as against Mr. Bristol in life and his estate after his death, contingent, became certain; on that date therefore the cause of action accrued. The surrender by the treasurer of the corporation to the executors of Mr. Bristol of the pledged shares in no way affects his contract;

that stands quite independent of the pledge; and as his estate is more than sufficient to redeem his promises it is quite unnecessary to consider any question as to the disposition made of them.

The Superior Court is advised to render judgment against the defendants as executors for the sum of ten thousand dollars with interest from April 1st, 1879, in favor of the plaintiff as receiver of the American National Life & Trust Company.

In this opinion the other judges concurred.