John ONETO, Plaintiff,

v.

TOWN OF HAMDEN, Defendant.

No. 3:98CV1769(JBA).

United States District Court,
D. Connecticut.

Oct. 23, 2001.

Michael W. Cahill, Kerry M. Gleason, Law Offices of Michael W. Cahill, New Haven, CT, for Plaintiff.

Duncan J. Forsyth, James M. Sconzo, Daryl C. Capuano, Michelle L. Treadwell, Halloran & Sage, Hartford, CT, for Defendant.

*Ruling on Defendant's Motion
for Summary Judgment
[Doc. # 38]*

ARTERTON, District Judge.

I. Introduction

The plaintiff in this action, John Oneto, is a police officer employed by the defendant, the Town of Hamden. After being twice passed over for promotion to the rank of detective in the 1990s, Oneto filed a lawsuit against the town in state court. While the suit was pending, Oneto was promoted to a vacant detective position by the Board of Police Commissioners ("Police Board"). Another town body, the Civil Service Commission ("CSC"), refused to recognize the promotion, however, and Oneto did not receive the pay or perform the duties of a detective. Several months later the lawsuit was settled by entry of a stipulated judgment, and the town agreed to recognize Oneto's promotion.

Although Oneto was thereafter paid as a detective and assigned the duties of a detective, the Civil Service Commission later inquired into the validity of his long-sought-after promotion by holding a public meeting. Oneto became so upset at the meeting that he suffered a cardiac event and had to be taken from the meeting in an ambulance. No action has been taken since the meeting, and his promotion has not been discussed or questioned by the town since.

Oneto commenced this action against the town, claiming myriad damages and injuries from the actions of the town officials, both in denying the promotion initially (from 1993 to June 1, 1998) and then in challenging the agreed-upon promotion after the entry of judgment.

Oneto's complaint contains state law claims relating to civil service policies and procedures and federal free speech and equal protection claims. Specifically, Oneto claims that the town's failure to promote him in 1995 was based in part on retaliation for his first amendment activities, which included campaign contributions to candidates challenging the mayor, and constituted a denial of equal protection. Finally, he alleges that the town's attack on his promotion after the June 1, 1998 Stipulated Judgment constituted an additional denial of equal protection.

The defendant has moved for summary judgment on all counts, and for the reasons set out below, the Court will grant summary judgment in the defendant's favor on all claims arising before June 1, 1998, but will deny summary judgment as to plaintiff's post-June 1, 1998 equal protection class of one claim.

II. Factual Background

A. *The Process of Promoting Police Officers In The Town Of Hamden* [1]

There are two committees in the Town of Hamden that deal with the promotion of police officers: the CSC and the Police Board. When is vacancy is created in the promotional ranks of the Hamden Police Department by resignation or otherwise, the CSC announces an opening for that position. Once applications have been submitted and reviewed by the CSC to make sure that each applicant meets the minimum qualifications listed in the vacancy posting, the CSC administers and scores a civil service exam. From the exam results, the CSC creates a list of eligible appointees: if there is one vacancy, there are three names certified by the CSC; for each additional vacancy, an additional

1. The following description, except what is otherwise footnoted, is found in the deposition of John Ambrogio, the former chief of police, at pages 6 through 10.

name is certified.[2]

The process then shifts to the Police Board, which interviews each of the certified candidates and promotes the candidate or candidates it chooses. The Police Board may only pick a candidate from the list certified by the CSC, and may only fill vacancies announced by the CSC.

Finally, once the Police Board has selected the person to be promoted, the CSC is notified and must then certify the promotion, to complete the process.

### B. *Oneto's Promotion*

Oneto has been employed by the Hamden Police Department for 13 years, serving at various times as a patrol officer, court officer, evidence officer, extra duty officer, street crimes officer and undercover narcotics officer.[3]

In 1993 Oneto sought promotion to the position of detective and sat for a civil service exam.[4] A promotion list based on the exam results was not certified until November of 1995,[5] and no promotions were made until November 19, 1995.[6] There were two vacancies for detective positions,[7] and thus there were four names certified by the CSC. Oneto was the second-ranked candidate,[8] but the Police Board was allowed to select any two of the top four candidates. Instead, however, the Police Board selected the third- and fifth-ranked candidates.[9]

Oneto's initial grievance was with the Police Board and its members: in a closed meeting, two Police Board members, James Cousins and Hilda Sanford, made disparaging comments about him;[10] then, they voted to pass him over and instead promote the fifth-ranked candidate. A third Police Board member, Donald Pritchard, reported these comments to the chief of police, John Ambrogio.[11] Ambrogio and Pritchard went to the mayor, Lillian Clayman, and reported the comments to her.[12] Clayman was angry at Pritchard for discussing the matter with anyone; Clayman did nothing to rectify the situa-

---

2. Def.'s Local R. 9(c)(1) Statement ¶ 10; Pl.'s Local Rule 9(c)(2) Statement at 1 (admitting ¶ 10).

3. Pl.'s Dep. 6, 9, 12, 25–29.

4. Def.'s Local R. 9(c)(1) Statement ¶ 15; Pl.'s Local R. 9(c)(2) Statement at 2 (admitting ¶ 15).

5. Raccio Aff. ¶ 18; Pl.'s Revised Complaint in the 1996 state suit ¶ 11, found at Def.'s Mot. Summ. J. Ex. F, page 2.

6. Def.'s Local R. 9(c)(1) Statement ¶ 24; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 24).

7. Def.'s Local R. 9(c)(1) Statement ¶ 14; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 14).

8. Def.'s Local R. 9(c)(1) Statement ¶ 22; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 22).

9. Def.'s Local R. 9(c)(1) Statement ¶ 25; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 25). The town claims that selecting the fifth-ranked candidate was not illegal because the first-ranked candidate was simultaneously promoted to sergeant, and thus the fifth-ranked candidate should have moved up one place. Def.'s Local R. 9(c)(1) Statement ¶ 25 n. 1; Def.'s Local R. 9(c)(1) Statement ¶ 27 ("[n]o determination was ever made as to the legitimacy of the Police Commission's promotion of the fifth ranked candidate"); Pl.'s Local Rule 9(c)(2) Statement at 2 (denying ¶ 27).

10. Pritchard Dep. at 13.

11. Pritchard Dep. at 18–19; Ambrogio Dep. at 20.

12. Pritchard Dep. at 19–20; Ambrogio Dep. at 21.

tion.[13]

In early 1996 there were four more vacancies for detective positions.[14] While plaintiff remained first on the list,[15] the Police Board promoted the fourth-, sixth-, seventh- and eighth-ranked candidates.[16]

Twice passed over for promotion, Oneto commenced an action in the Connecticut Superior Court on April 2, 1996 (the "1996 state suit") against the Town of Hamden, the Police Board, all Police Board members and Mayor Clayman, alleging that he was being illegally denied the promotion to which he was entitled.[17]

On February 18, 1998, while the 1996 lawsuit was pending, the Police Board reversed course and promoted Oneto to a newly-created vacant detective position.[18] By this time, however, the eligibility list on which Oneto's name appeared had expired,[19] and now the new promotion—which could have been intended to rectify the failure to promote in 1995—was itself arguably illegal. The Police Board notified the CSC of the promotion, but the CSC refused to recognize it on the grounds that it did not comply with Rules 8, 9 and 10 of the Civil Service Commission.[20]

From February 18, 1998 until the stipulated judgment on June 1, 1998, Oneto's promotion was not recognized by the town because the CSC would not certify it.[21] Thus, although "promoted" by the Police Board, Oneto was paid as a patrolman and assigned patrolman duties.[22]

On June 1, 1998, Oneto and the Town of Hamden entered into a settlement agreement, captioned as a "stipulated judgment" in the 1996 state suit, whereby the town agreed that judgment would be entered in Oneto's favor and the Town of Hamden would recognize Oneto's February 18, 1998 promotion by the Board of Police Commis-

13. Ambrogio Dep. at 22.

14. Def.'s Local R. 9(c)(1) Statement ¶ 29; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 29).

15. Def.'s Local R. 9(c)(1) Statement ¶ 31; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 31).

16. Def.'s Local R. 9(c)(1) Statement ¶ 32; Pl.'s Local Rule 9(c)(2) Statement at 2 (admitting ¶ 32).

17. Def.'s Mot. Summ. J. Ex. F (Revised Complaint).

18. Def.'s Local R. 9(c)(1) Statement ¶ 41; Pl.'s Local Rule 9(c)(2) Statement at 3 (admitting ¶ 41).

19. Oneto denies that the list was expired. *See* Pl.'s Local Rule 9(c)(2) Statement at 3. However, according to the undisputed evidence in the record, "the total valid period for any eligibility list shall not exceed two years from the date it was initially established." Rules and Regulations of the Civil Service Commission, Rule 8, sec. 2, at Def.'s Mot. Summ. J. Ex. A, page 8; *accord* Def.'s Local R. 9(c)(1) Statement ¶ 8 and Pl.'s Local Rule 9(c)(2) Statement at 1 (admitting ¶ 8). The list from which Oneto was promoted in 1998 was promulgated in November 1995. Raccio Aff. ¶ 18; *see also* Pl.'s Revised Complaint in the 1996 state suit ¶ 11 (found at Def.'s Mot. Summ. J. Ex. F, page 2). A memo from the CSC to the Police Board notifies the Police Board that the list expired on November 1, 1997. Def.'s Mot. Summ. J. Ex. J. The town has thus come forward with evidence that the list was expired, and there is no evidence in the record disputing this fact. Accordingly, Oneto has failed to meet his burden on summary judgment as to the validity of the list. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses").

20. Def.'s Local R. 9(c)(1) Statement ¶¶ 43–44; Pl.'s Local Rule 9(c)(2) Statement at 3 (admitting ¶¶ 43 & 44).

21. Ambrogio Dep. at 64.

22. Ambrogio Dep. at 65.

sioners.[23] The stipulated judgment was approved by Judge Blue of the Superior Court,[24] and Oneto has carried a detective badge since that time.[25] It is undisputed that the town paid Oneto all back pay and attorney's fees due and owing under the agreement.

Despite the stipulated judgment, which on its face establishes Oneto's entitlement to the detective position, eight months after the stipulated judgment was agreed to, CSC Chairperson Anthony D. Raccio called for an investigation of Oneto's promotion and appointment to the position of detective. Raccio sent a letter to Carol Noble, chair of the Town of Hamden's Investigative Committee, requesting that she look into the validity of Oneto's appointment.[26] Previously, Noble's committee dealt only with pension issues and had never investigated a promotion before.[27] On January 19, 1999, Oneto was notified that his appointment was going to be discussed at a CSC meeting. The meeting was delayed at the request of Oneto's attorney, and was finally held on February 4, 1999. At the meeting, the CSC told Oneto that the stipulation "did not matter" and that the committee "would do what it wanted to do."[28] Oneto became very upset and suffered an episode of ventricular tachycardia, and he was taken away from the meeting in an ambulance.

### C. Oneto's Relationship With Raccio

In 1995, Raccio and Oneto were "very, very good friends."[29] Raccio told Oneto that he scored second on the promotional exam, and asked if Oneto knew anyone on the Police Board.[30] Oneto responded that he did not, and Raccio told Oneto, "[D]on't worry about it … I am drinking buddies with the head of the Police Commission, Jimmy Cousins."[31] Oneto was excited about the fact that he scored second on the exam, and told a friend, who also happened to be Chief Ambrogio's friend.[32] The unnamed mutual friend telephoned Oneto shortly thereafter and told him that Ambrogio wanted to see him the next day.[33] When Oneto saw Ambrogio, Ambrogio asked him to recite his earlier conversation with Raccio verbatim while Ambrogio took notes.[34] Ambrogio went to Mayor Clayman and asked her why the head of the CSC (Raccio) divulged Oneto's score, which had not yet been officially certified.[35] Raccio was called in to see Clayman and was verbally admonished for releasing the score.[36] Raccio later found out that Oneto was the person who told Ambrogio about the conversation, and from that time forward, Raccio has been "very, very cool [and] unfamiliar," and when they first saw each other after the disclosure there was "nothing more than a hello at which time

---

**23.** Def.'s Mot. Summ. J. Ex. M (Stipulated Judgment).

**24.** Am. Compl. ¶ 48.

**25.** Def.'s Local R. 9(c)(1) Statement ¶ 54; Pl.'s Local R. 9(c)(2) Statement at 3 (admitting ¶ 54);

**26.** Def.'s Mot. Summ. J. Ex. N.

**27.** Oneto Dep. at 76.

**28.** Oneto Dep. at 82.

**29.** Oneto Dep. at 148.

**30.** *Id.*

**31.** *Id.*

**32.** *Id.* at 148–149.

**33.** *Id.* at 149.

**34.** *Id.*

**35.** *Id.*

**36.** *Id.*

he basically was very curt and walked away from me." [37]

### III. Standard

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Farias v. Instructional Sys.*, 259 F.3d 91, 97–98 (2d Cir.2001) (citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. GE*, 252 F.3d 205, 216 (2d Cir. 2001), *citing, inter alia, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[I]f there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001), *citing Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir.2000).

"Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex*, 477 U.S. at 323–324, 106 S.Ct. 2548. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Brown v. Henderson*, 257 F.3d

246, 252 (2d Cir.2001), *quoting Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

### IV. Analysis

Oneto's claims against the town are best analyzed by separating them into two distinct groups. First, Oneto seeks to reopen claims surrounding his earlier (pre-June 1, 1998) failure to be promoted to the detective position. Second, he seeks redress for the damages he suffered from the town's post-June 1, 1998 attack on his promotion.

#### A. Pre–1998 Failure to Promote to Position of Detective

##### 1. Accord and Satisfaction

 Oneto's 1996 state action alleged that he was entitled to the position of detective and that he was being unlawfully denied that position. On June 1, 1998, the parties to the 1996 state action agreed to entry of a stipulated judgment in which the town consented to judgment in Oneto's favor, agreed to recognize his February 18, 1998 promotion as valid, and agreed to pay his attorney's fees and any back salary from the February 18 effective date of the promotion. The agreement also contained an enforcement provision, whereby Oneto could petition any court of competent jurisdiction for equitable relief or damages if the town did not comply with the terms of the agreement. Neither party disputes the fact that the stipulated judgment was meant to settle Oneto's claims against the town.[38]

The defendant has moved for summary judgment on all of Oneto's claims arising before the entry of the stipulated judgment, on the ground that the stipulated judgment operated as an accord and satis-

---

37. *Id.* at 150.

38. *See* Pl.'s Mem. Opp'n Summ. J. at 5 (purpose of stipulated judgment was "to settle this conflict once and for all"); Def.'s Mem. Supp. Summ. J. at 15.

faction, extinguishing Oneto's original claims.

 While Oneto contends that the doctrine of accord and satisfaction is "more appropriately raised in a contract or mercantile situation than in the case at bar," [39] a "stipulated judgment, in contrast to a judicial determination of rights, has its roots in the law of contracts as well as the law of judgments." *Kim v. Magnotta,* 249 Conn. 94, 733 A.2d 809 (1999). "A judgment rendered in accordance with ... a stipulation of the parties is to be regarded and construed as a contract." *Issler v. Issler,* 250 Conn. 226, 235, 737 A.2d 383 (1999).

 " 'Accord and satisfaction' is a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in settlement of the claim and to perform the agreement." *B & B Bail Bonds Agency of Conn. v. Bailey,* 256 Conn. 209, 213, 770 A.2d 960 (2001) *quoting* 1 Am.Jur.2d, Accord and Satisfaction § 1 (1994). The stipulated judgment at issue here is an accord or compromise, the satisfaction (full performance) of which extinguished the original claim in dispute, because: (i) there was a bona fide dispute between Oneto and the town as to whether or not Oneto was entitled to be a detective, and, if so, as of what date that promotion was effective; (ii) each party gave up an element of its original claim in the suit in order to terminate the action; and (iii) the town fully performed the agreement when it recognized Oneto's February 1998 promotion, paid him back pay to February 1998 and paid his attorney's fees.

Oneto claims that the settlement failed because the town violated the agreement—i.e., there was no satisfaction. When parties settle a disputed claim by way of accord and satisfaction, the original claim is not extinguished until the settlement is actually performed. *Blake v. Blake,* 211 Conn. 485, 491, 560 A.2d 396 (1989) (creditor's *receipt* of the promised payment discharges the underlying debt and bars any further claim relating thereto). If one of the parties does not fulfill its obligations under the settlement or accord, there is no satisfaction and the party alleging breach can disregard the purported settlement and sue on the original obligation.

Oneto claims the agreement was breached when the Town of Hamden, through the CSC, investigated Oneto's entitlement to the position, because "[t]he *recognition* of ... the promotion was the key act to be performed by the defendant pursuant to the stipulated judgment." [40]

First, regardless of what the pleadings claim about the whether Oneto is or is not the detective, Oneto himself admits that he is the detective.[41] Oneto's status as a de-

**39.** Pl.'s Mem. Opp'n Summ. J. at 8

**40.** Pl.'s Mem. Opp'n Summ. J. at 9 (emphasis deleted in part).

**41.** *See* Def.'s Local R. 9(c)(1) Statement at 12 ("54. From February 18, 1998 to the present date, the Plaintiff has held the position as [sic] Investigator in the Town of Hamden, and is receiving pay as such") and Pl.'s Local R. 9(c)(2) Statement at 3 (admitting ¶ 54); *see also* Oneto Dep. at 96 ("Q: Is it fair to say that be it February 18 or February 20, 1998, you were promoted to detective? A: By the

Hamden Police Commission, yes."); *id.* at 97 ("[a]ll I know is that post-February 18, 1998, I was eventually paid as a detective and I was given a portion of back pay"); *id.* at 99 ("Q: Is it fair to say that this document [the stipulation] indicates that you were awarded the position of [detective] effective February 20, 1998? A: It certainly states that it did. I am not, *as a police detective,* aware of what the significance is...") (emphasis added); *id.* at 100 ("Q: Are you still a [detective]? A: I am still an investigator/detective, yes, as of right now").

tective, and thus the town's satisfaction of the accord, is not a genuine issue of material fact in dispute, despite Oneto's efforts to create a metaphysical issue of what it means to *be* the detective.

Second, Oneto's claim that the contract impliedly contains a requirement that the town recognize or not ever question the validity of Oneto's promotion, is not sufficient to be a factual issue for jury determination, even though contract interpretation is ordinarily a question of fact for the jury. *Bowman v. 1477 Central Ave. Apts., Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987); *Finley v. Aetna Life & Cas. Co.,* 202 Conn. 190, 199, 520 A.2d 208, *overruled on other grounds by Curry v. Burns,* 225 Conn. 782, 626 A.2d 719 (1993).

Where there is no ambiguity in the terms of a written contract, it is the province of the court, and not of the jury, to determine its meaning. *Bank of Boston Connecticut v. Schlesinger,* 220 Conn. 152, 158, 595 A.2d 872 (1991) ("[w]here there is definitive contract language, determination of what parties intended by their contractual commitments is a matter of law") (internal quotations omitted); *Issler v. Issler,* 250 Conn. 226, 235, 737 A.2d 383 (1999) ("[a]lthough ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact, where there is definitive contract language, determination of what the parties intended by their contractual commitments is a question of law") (citations omitted).

The contract at issue here is complete on its face and, despite Oneto's best efforts to create ambiguity, is clearly understand-able; thus, its interpretation is a matter of law that can appropriately be decided by the Court on summary judgment. *See Pesino v. Atlantic Bank of N.Y.,* 244 Conn. 85, 92, 709 A.2d 540 (1998) ("any ambiguity in a contract must emanate from the language used in the contract rather than one party's subjective perception of the terms") (internal quotations omitted). It is abundantly clear that the contract did not contain a provision that no town official would ever question Oneto's promotion. The contract recognized Oneto's February 1998 promotion and required that he be paid as a detective. By Oneto's own admission, he has been a detective and paid as a detective since February 1998. The accord or compromise was thus satisfied by full performance on the part of the town, and the claims at issue in the underlying 1996 state suit were extinguished by the doctrine of accord and satisfaction.

### 2. *Statute of Limitations*

The only claims at issue in the 1996 state suit, however, were Oneto's state law claims. Because the settlement agreement was in the form of a stipulated judgment in the state suit (which contained only state law allegations), and because the stipulated judgment contained no general release of claims against the town, Oneto's federal law claims which were never expressly released may not have been settled by the doctrine of accord and satisfaction.[42]

■ However, any claims Oneto had against the town accrued when he was passed over for promotion in February of 1996,[43] and thus would have become time-

---

**42.** *But cf. Fayer v. Town of Middlebury,* 258 F.3d 117, 124 (2d Cir.2001) ("In Connecticut, the doctrine of res judicata establishes that a prior judgment on a particular cause of action 'is conclusive with respect to any claims relating to the cause of action which were actually made *or might have been made.*' ") (emphasis in original), *quoting Corey v. Avco–Lycoming Div.,* 163 Conn. 309, 317, 307 A.2d 155 (1972).

**43.** Def.'s Local R. 9(c)(1) Statement ¶¶ 30 & 32 (Police Board promoted the other candidates instead of Oneto on February 14, 1996);

barred in February of 1999.[44] This action was commenced in September of 1999. As plaintiff's counsel conceded at oral argument, Oneto's federal claims relating to the town's passing him over for promotion are time-barred.

### B. Post June 1, 1998 Claim

 Oneto claims that the defendant's actions after the entry of the June 1, 1998 stipulated judgment (questioning the legitimacy of his promotion in writing and in a public meeting) also give rise to a cause of action, separate and distinct from the failure to promote claims discussed *supra*.[45]

Oneto claims that by investigating his promotion, even after it was agreed to in the stipulated judgment, the CSC singled him out to harass him, causing injury. This is a federal equal protection claim maintained under a so-called "class of one" theory.[46]

Oneto claims two post-June 1, 1998 events constituted a denial of equal protection:[47] Raccio sent a letter to Carol Noble asking the town's investigative committee to look into Oneto's appointment as detective,[48] and on February 4, 1999 the CSC held a meeting regarding the promotion, at which the CSC told Oneto that the stipulation "did not matter" and that the committee "would do what it wanted to do."[49]

The equal protection clause, which provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, "is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir.2000), *quoting City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

A successful equal protection claim may be brought by a so-called class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (complaint alleging that defendant village's demand for a 33–foot easement as a condition of connecting plaintiff's property to the municipal water supply, where it required only 15 feet from other property owners, was "irrational and wholly arbitrary" and motivated by plaintiff's prior litigation against the village, stated a claim for relief under equal protection clause).

While "proof of subjective ill will is not an essential element of a 'class of one' equal protection claim," *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir.2001), *citing Wil-*

---

Pl.'s Local R. 9(c)(2) Statement at 2 (admitting ¶¶ 30 & 32).

**44.** Federal courts in Connecticut are required to apply Connecticut's residual personal injury statute of limitations, which is three years, to claims brought under § 1983. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir.1994).

**45.** *See* Pl.'s Mem. Opp'n Summ. J. at 12 (new "round of attacks" from November 1998 to March 1999 "obviously lead to a whole new cause of action").

**46.** At oral argument on October 5, 2001, Oneto's attorney confirmed that the only post-

stipulated judgment claim alleged is an equal protection "class of one" claim.

**47.** *See* Oneto Dep. at 103 ("Q: Is it fair to say, then, that after June 1, 1998, the only two concrete actions that were taken [were the letter and the meeting]? A: Yes"); *see also* Oneto Dep. at 101–102 (A.J. Raccio is the only person Oneto identifies as having taken action to frustrate the stipulation).

**48.** Def's Mot. Summ. J. Ex. N.

**49.** Oneto Dep. at 82.

*lowbrook,* 528 U.S. at 565, 120 S.Ct. 1073, a "class of one" plaintiff cannot state an equal protection violation without showing that he was treated differently than similarly situated individuals were or would have been treated, because "[a] state may treat differently situated people in a different way." *Allen v. Cuomo,* 100 F.3d 253, 261 (2d Cir.1996), *citing Schweiker v. Hogan,* 457 U.S. 569, 590, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982).

The town claims that Oneto has failed to adduce any evidence showing that others in his position were treated differently by the Town of Hamden. This absence of proof of actually similarly situated others is undoubtedly because of the unique circumstances in which Oneto found himself: his promotion was finalized only after resort to the courts, and well outside the ordinary course of civil service procedure.

Oneto relies on the fact that no other police officer who was promoted in the Town of Hamden ever had that promotion questioned at a public meeting. Here, however, he is simply not comparing "apples to apples": while Oneto, like other detectives, was promoted to that position, other officers were promoted under the ordinary procedures of the Police Board and the CSC, while Oneto's entitlement to his position was only established after three years of contested litigation.[50]

While Oneto is not similarly situated with respect to all other police department promotees, there is evidence in the record that he is not necessarily the *sine qua non* portrayed by the defendants. Specifically, both times Oneto was passed over for promotion, candidates were allegedly promoted in violation of the civil service rules. In 1995, the fifth-ranked candidate was promoted, even though under the process as explained by Chief Ambrogio, only the top four candidates were eligible for promotion.[51] In 1996, there were four vacancies for detective positions, which would require the Police Board to promote from the top six candidates. Nonetheless, the seventh- and eighth-ranked candidates were promoted.

From the evidence in the record regarding these three promotions, a reasonable jury could conclude that Oneto was similarly situated with respect to three other detectives, because they, too, received their promotions via an irregular process, and were not investigated by Raccio and the CSC.

With a class, albeit small, of similarly situated individuals to whom Oneto can compare himself, he will then be required to show that any difference in treatment was without a rational basis. *Willowbrook,* 528 U.S. at 564, 120 S.Ct. 1073. While Oneto's claim will be difficult to establish in this regard, given the fact that Raccio likely had legitimate concerns about the town's use of stipulated judgments that result in promotion outside the ordinary course of civil service procedure,

---

50. Counsel maintained at oral argument that Oneto's claim that his promotion by virtue of the February 1998 Police Board action and not the stipulated judgment shows he is entitled to define the class of similarly situated people as those who were promoted in the ordinary course of town business. However, the list from which Oneto was promoted by the Police Board in February 1998 was expired, *see supra* note 20, and the February 1998 promotion was only formally recognized by the town after the entry of the stipulated judgment on June 1, 1998. *See supra* p. 7 and Def.'s Mot. Summ. J. Ex. M (Stipulated Judgment).

51. If there is one vacancy, there are three names certified by the CSC; for each additional vacancy, an additional name is certified. Def.'s Local R. 9(c)(1) Statement ¶ 10; Pl.'s Local Rule 9(c)(2) Statement at 1 (admitting ¶ 10). With two vacancies, only the top four candidates were eligible.

there is sufficient evidence in the record, when taken together and with all inferences drawn in Oneto's favor, from which a jury could conclude that Raccio's actions were motivated by reasons unrelated to a legitimate investigative objective.

While Raccio and Oneto used to be "very, very good friends," [52] their relationship soured considerably when Raccio learned that it was Oneto's fault that Raccio was verbally admonished by the mayor for releasing Oneto's score on the civil service exam.[53] Raccio's father had "a great dislike" [54] for Oneto's father,[55] and Raccio was "drinking buddies" with Cousins, a member of the Police Board who made disparaging remarks about Oneto and was later a named defendant in the 1996 state suit brought by Oneto. In addition to the ill will stemming from Raccio's personal relationship with Oneto, there is evidence in the record that suggests Raccio knew his investigation was baseless: town attorney Joshua Winnick was a signatory to the Stipulated Judgment, which should have made it clear to the CSC after June 1, 1998 that Oneto was entitled to the promotion; [56] Raccio waited for months after the Stipulated Judgment to question the promotion; and Raccio dropped his inquiry after only one meeting. An inference of ill will could also be drawn from Raccio's choice of forum: rather than privately inquire of town officials or Oneto himself as to the basis of Oneto's promotion or its achievement by stipulated judgment, Raccio chose instead to call Oneto to a public meeting. Finally, it is clear from the record that Oneto has had a turbulent relationship with the town: he was passed over several times for promotion and has filed at least three lawsuits against the town.

In sum, Oneto has presented minimally sufficient evidence from which a jury could conclude that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook*, 528 U.S. at 564, 120 S.Ct. 1073.

## V. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment [Doc. # 38] is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted for the defendant on all of plaintiff's claims arising before June 1, 1998, but is denied as to plaintiff's post-June 1, 1998 equal protection class of one claim.

IT IS SO ORDERED.

---

52. Oneto Dep. at 148.

53. *See supra* section II.C.

54. Ambrogio Dep. at 37.

55. Enmity between fathers, a familiar motif in the Western literary and cultural canon, may poison their children's relationship. Consider, for example, the American legend of the Hatfields and McCoys, and the repercussions of the Montagues' and Capulets' mutual hatred, "[w]hich, but their children's end, nought could remove." William Shakespeare, Romeo and Juliet, Prologue, line 12; *cf. also* William Shakespeare, The Merchant of Venice, Act III, scene 5, line 1 ("Yes, truly, for look you, the sins of the father are to be laid upon the children").

56. Between February and June 1998, after the Police Board's promotion but before the entry of the Stipulated Judgment binding the town to that promotion, the CSC indicated that it was waiting for Attorney Winnick's opinion as to the validity of the Police Board's action. Raccio Aff. ¶¶ 34–36, 38. Thus, after judgment entered, Oneto argues, an inference can be drawn that Raccio knew the investigation was without merit.