Dan ROSSI, Plaintiff,

v.

The CITY OF NEW YORK, Rudy Washington, as Deputy Mayor, Barbara Turkowitz, as Counsel to the City Council, James Morris, individually and as Director of Inspections, Dept. of Health, and Rudolph Giuliani, as Mayor, Defendants.

No. 99 CIV. 9410(AKH).

United States District Court, S.D. New York.

Aug. 30, 2002.

David Bishop, North Babylon, NY, for Dan Rossi, Plaintiff.

Dan Rossi, Tryon & Pascale, PC, Garden City, NY, Pro se.

Rachel Bess Goldman, Michael D. Hess, Corporation Counsel, New York City, for The City of New York, Rudy Washington, Barbara Turkowitz, James Morris, Rudolph Giuliani, Defendants.

### OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

HELLERSTEIN, District Judge.

In this case alleging selective enforcement of New York City's mobile food vending permit laws, defendants move under Rule 56 of the Federal Rules of Civil Procedure for an order granting them summary judgment dismissing plaintiff's complaint. As discussed below, plaintiff has failed to raise a triable issue of fact as to whether the defendants have selectively enforced the vending permit laws against him. Accordingly, defendants' summary judgment motion is granted.

### FACTUAL BACKGROUND

#### 1. NYC's Permit Scheme

Food vendors can be found on many street corners in New York City. Hawking everything from ice cream to knishes, these vendors are considered by many to be an important aspect of the City's culture.

Although street vendors purvey simple food items, they are subject to complicated licensing rules established by New York City (the "City"). To start, vendors may sell food from vehicles, pushcarts or stands in public areas of New York[1] only after receiving a permit for the vehicle or stand. *See* N.Y.C. Admin. Code § 17–307. Before 1983, the Department of Health ("DOH") could issue an unlimited number of the required permits, and anyone could hold as many permits as he or she desired. In 1983, however, Local Law 17–83 ("LL17") was passed, limiting the number of full-term mobile food vending permits to 3,000 and the number of temporary permits to 1,000.[2] *See* N.Y.C. Admin. Code

---

[1] "Public space" includes public property owned by the City of New York, other than property under the jurisdiction of the New York City Department of Parks & Recreation. *See* N.Y.C. Admin. Code §§ 17–306, 17–307(b)(1), 17–320; 14 RCNY § 6–03. Property under the Park Department's jurisdiction is considered "restricted space," a category which also includes private property. Property owned by the Port Authority of New York and New Jersey, a joint state agency of New York and New Jersey, is also "restricted space" for mobile food vending purposes.

[2] A "full-term" permit is valid for two years and authorizes the holder to vend year round. A "temporary" or "seasonal" permit is valid

§§ 17–307(b)(2)(a) & (f)(3)(a)(i), respectively.[3] In passing LL17, the City Counsel stated that its purpose was to reduce congestion caused by the presence of food vendors.

In 1995, the City Counsel enacted Local Law 15–95 ("LL15"), which limited to one the number of public space mobile food vending permits any one individual person or entity could hold. *See* N.Y.C. Admin. Code §§ 17–307(b)(2)(c) & (f). The "one person, one permit" rule is strict: pre-LL15 permit holders were not "grandfathered," so multiple renewals are prohibited to the same extent as multiple issuances. Moreover, LL15 prohibits the DOH from issuing permits to (or renewing the permits of) a corporation if that corporation shares an officer or principal with another corporation already possessing a permit, or, likewise, to an individual who is an officer or principal in a corporation already possessing a permit. The admitted purpose of LL15 was "to stop the amassing of large numbers of permits by any one individual, corporation, partnership or other business entity, and the illegal leasing of such permits by some of these multiple permit holders for exorbitant sums of money." *See* Preamble to LL27 (discussing LL15).

The strict limitations of LL15 have been amended several time since 1997. First, in 1997, the City Council passed Local Law 27–97 ("LL27"), which enabled the DOH to issue multiple temporary permits to any person or entity who (i) held multiple temporary permits when LL15 was passed, (ii) was an exclusive distributor or manufacturer of a food product when LL15 was passed, and (iii) still is such an exclusive distributor or manufacturer. Under LL27, qualified permit holders are eligible for one full-term permit plus the same number of temporary permits they held before LL15 was enacted, up to a maximum of 60 temporary permits. *See* N.Y.C. Admin. Code § 17–307(f)(3)(a)(ii)(B). The purpose of LL27 was to correct an unintended effect of LL15 on exclusive distributors of seasonal food items, who must have several pushcarts to generate the sales necessary to stay in business.

Finally, in 1999, the City Council passed Local Law 23–99 ("LL23"), which enables the DOH to issue multiple permits to mobile vendors within the City's parks, so long as such vendor has an agreement or contract with the New York City Department of Parks and Recreation ("Parks Department"). *See* N.Y.C. Admin. Code § 17–320(b). Vending in City parks is therefore excluded from LL15's "one person, one permit" rule. LL23 was enacted for a similar purpose as LL27: to ensure that the parks' largely seasonal vendors could generate enough sales to stay in business.

### 2. Plaintiff

Plaintiff Dan Rossi entered the mobile food vending business as a metal worker, manufacturing and repairing mobile food vending pushcarts through his company, Precision Carts, Inc. Demand for Rossi's pushcarts fell off after LL17 limited the number of available permits, since no new

---

only from April 1 through October 31 of a specific year. *See* N.Y.C. Admin. Code §§ 17–307(e) & (f)(3)(e). For example, a vendor selling Italian ices only in the summer would need a temporary permit, while a vendor selling hot dogs throughout the year would need a full-term permit. Temporary permits, as a class, did not exist before LL17.

**3.** LL17 placed a moratorium on the issuance of new permits until the total number of permits fell below the prescribed levels. Under LL17, holders of existing permits were "grandfathered"—i.e., they were allowed to renew their permits, even if the renewal meant that the number of outstanding permits remained above the prescribed number.

permits were issued for many years until the number of outstanding permits fell below 3,000. After LL17 was enacted, Rossi determined that the only way to keep his pushcart manufacturing business alive was to buy businesses that already held large numbers of permits. Rossi ultimately purchased three companies with a total of 499 permits: A.J.M. Business Service, Inc. (which held 200 permits), 117 Mulberry Street, Inc. (199 permits) and Good Morning Carts (100 permits). After purchasing a permit-holding company, Rossi would attach one of the company's permits to a pushcart of his own manufacture and then lease the cart to a vendor, at a rate of five to ten dollars a day, depending on the type of cart.

LL15's "one person, one permit" rule destroyed Rossi's mobile food vending business. While Rossi ran the largest mobile food vending operation in the City prior to 1995, holding 499 full-term public space mobile food vending permits, LL15 limited him to one full-term public space permit.[4] He holds his one permit through his corporation, AJM Business Services, Inc.

Rossi, and others like him who operated large mobile food vending businesses before LL15 was enacted, have spent the last seven years trying—largely unsuccessfully—to fight LL15 and related laws, both through political activity and in the courts.[5] The current case is the latest legal struggle surrounding New York's mobile vending permit scheme. In this act of the permit drama, Rossi alleges that the city has violated his right to equal protection under the laws by selectively enforcing LL15 against him.[6] Fundamentally, Rossi alleges that his outspoken political activities raised the ire of politicians, and that the politicians retaliated by enacting and selectively enforcing a permit scheme for the primary purpose of ruining Rossi and his business.

Rossi began his political activities in 1993, when, allegedly at the request of a group of disabled veterans, Rossi investigated a program set up by the high-profile Fifth Avenue Association and the City to help disabled veterans build food vending

4. Rossi is not entitled to multiple temporary public space permits under LL27, and he holds no restricted area permits.

5. Cases brought by Rossi and his fellow vendors include *Big Apple Food Vendors' Assoc. v. City of New York*, 168 Misc.2d 483, 638 N.Y.S.2d 540 (1995), *aff'd*, 228 A.D.2d 282, 644 N.Y.S.2d 216 (1st Dep't), *appeal dismissed* 88 N.Y.2d 1064, 651 N.Y.S.2d 407, 674 N.E.2d 337 (1996); *Hot Dog 'N Boys, Inc. v. City of New York*, 128 A.D.2d 1031, 512 N.Y.S.2d 961 (1st Dep't), *appeal denied*, 70 N.Y.2d 606, 519 N.Y.S.2d 1030, 514 N.E.2d 388 (1987); *Precision Vending Carts v. City of New York*, 672 N.Y.S.2d 346 (1st Dep't), *appeal denied*, 92 N.Y.2d 815, 683 N.Y.S.2d 759, 706 N.E.2d 747 (1998); and *A.J.M. Business Services, Inc. v. City of New York*, Index No. 103957/1999 (N.Y.Sup.).

6. Rossi originally alleged four causes of action. First, Rossi charged that the city violated his equal protection right by selectively enforcing LL15. Second, Rossi alleged that the city enacted LL15 and related laws for the purpose of destroying plaintiff's business in violation of his right to substantive due process. Third, Rossi alleged that the city violated his procedural due process rights by denying his application to hold multiple permits to vend in the Public Parks under LL23. Finally, Rossi charged that the defendants acted in conspiracy to deny various constitutional rights to him. By an oral decision at argument of the City's motion for judgment on the pleadings, on April 3, 2001, confirmed in a summary written order the following day, I granted partial judgment to defendants, dismissing Counts Two, Three and Four of the Complaint. The defendants' current motion for summary judgment is therefore addressed only to Count One of the Complaint, which alleges violation of plaintiff's right to equal protection of the laws through selective enforcement of the permit rules.

businesses. According to Rossi, he exposed this program as being fraudulent, not helpful to veterans and financially lucrative to certain members of the Fifth Avenue Association. Rossi states that the program was terminated as a result of his investigation.

Rossi's political involvement continued in 1994, when an organized coalition of food vendors, the Big Apple Food Vendors Association ("Big Apple"), asked Rossi to be their vice-president. As vice-president, Rossi led Big Apple as it protested the City's enforcement of regulations that restricted vending on 94 streets. Rossi organized numerous demonstrations, and, as the figurehead of the protest, was interviewed by the press on numerous occasions.

Rossi maintains that his political activities angered and embarrassed numerous City officials and businessmen, and he claims, based on hearsay, that the City is now retaliating against him by destroying his business. Rossi, in support, claims that the former Speaker of the New York State Assembly, Mel Miller, told him in 1997 that all of Rossi's problems with respect to the vending industry were the result of his political activities. Rossi also claims that Jeffery and Frank Cicio told him that they were told by Barbara Turkowitz, counsel to the City Council, that members of the Council intended to introduce legislation to divest Rossi of his permits. Jeffery Cicio said the same in his deposition.

Rossi contends that, beyond just enacting legislation to destroy his business, the City has also selectively enforced these various permit laws against him. He offers anecdoctal examples: that others were granted permits to operate in the City's parks, but he was not; that the DOH made it more difficult for Rossi's carts to pass mandatory inspection; that others were granted multiple permits, while he was not; that the DOH issued vending permits to family members of other permit holders, but not to Rossi's family; and that the DOH is generally lax in enforcing the permit laws except as against Rossi.

In April 2001, I granted in part and denied in part defendants' motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for an order granting judgment on the pleadings. (See note 6, *supra,* describing dismissal of Counts Two, Three and Four.) After discovery, defendants again moved for judgment, this time pursuant to Rule 56. For the reasons stated below, I grant defendants' motion.

### DISCUSSION

1. *Summary Judgment Standards*

Summary judgment may be granted if there are "no genuine issues as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, *Harlen Assocs. v. Village of Mineola,* 273 F.3d 494, 498 (2d Cir.2001), the non-moving party must raise more than just a "metaphysical doubt" as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[M]ere

speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen*, 273 F.3d at 499.

## 2. *Equal Protection Requirements*

Rossi's principal claim is that the City and its officials have selectively enforced the permit laws in an attempt to prevent Rossi from operating an expansive mobile food vending business in retaliation for Rossi's outspoken political activities. Rossi asserts that the City's campaign against him violates his right to equal protection under the laws guaranteed by the Fourteenth Amendment to the Constitution.

The "Equal Protection Clause ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "The purpose of the equal protection clause ... is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918). This doctrine protects against such things as "selective enforcement" of laws, i.e., enforcement "with an evil eye and an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances." *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

While the equal protection clause is usually invoked by people who have been discriminated against based on their membership in a vulnerable class, the clause can be invoked equally by a "class of one" who "has been intentionally treated differently from others similarly situated [with] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *see also Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001).

Traditionally, a plaintiff who hoped to prevail on a claim of selective enforcement in the Second Circuit would have to prove (1) that he or she was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on " 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *LaTrieste Restaurant & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608–10 (2d Cir.1980)). There is some debate as to whether the Supreme Court's decision in *Village of Willowbrook* eliminated the requirement of malicious or bad faith intent to injure. *See Village of Willowbrook*, 528 U.S. at 565, 120 S.Ct. 1073 (holding that allegations of "irrational and wholly arbitrary" government action are sufficient to state an equal protection claim without inquiry into the defendants' subjective motivation). The trend after *Village of Willowbrook* appears to be that there is no need to show malice. *See, e.g., Harlen Associates*, 273 F.3d at 499–500 (dictum); *Jackson v. Burke*, 256 F.3d 93, 97 (2d Cir.2001) (per curiam) (same); *Gelb v. Board of Elections of New York*, 224 F.3d 149, 157 (2d Cir.2000) (same); *see also Russo v. City of Hartford*, 184 F.Supp.2d 169, 190–91 (D.Conn.2002); *Housing Works, Inc. et al. v. Turner et al.*, 179 F.Supp.2d 177, 200 (S.D.N.Y.2001); *Oneto v. Town of Hamden*, 169 F.Supp.2d 72, 80 (D.Conn.2001); *but see Presnick v. Town of Orange*, 152 F.Supp.2d 215, 224 (D.Conn.2001).

Accordingly, plaintiff, "'a class of one,'" must show either that "there was no rational basis for the unequal treatment received, ... *or* that the [unequal treatment] was motivated by animus." *Harlen Associates*, 273 F.3d at 500 (emphasis added). Therefore, in order to avoid summary judgment, Rossi must raise a triable issue of fact as to whether (1) he was treated differently from other similarly situated individuals, and (2) that such differential treatment either had no rational basis or was motivated by malice or bad faith.

### A. *Differential Treatment*

▪ Defendants argue that the record shows that all of the various people Rossi names as holding more than one permit—save one—in fact hold only one permit under LL15 or hold multiple permits only in compliance with LL23 or LL27. For example, Rossi alleges that vendors George and Thomas Makkos illegally hold multiple permits. The City shows that the Makkos brothers, who are officers in the same corporations, together hold only one full-term public space permit through BJB Vendors, Inc. They do, however, hold five temporary public space permits under LL27 through the company A & Z Fresh Nuts & Candies, Inc. Rossi cannot complain that others legally hold multiple temporary permits.

Moreover, the defendants have shown that the DOH does what it can to ensure that the permit laws are implemented correctly. When the various permit laws were passed, the DOH investigated permit holders' files and investigated cross-ownership by officers and corporations. For the new applications, the DOH verifies affidavits and performs a computerized check of the applicant's name and social security or Federal ID number. While claiming that the DOH does not knowingly issue permits in violation of the applicable laws, defen-

dants do not attempt to prove that the DOH and its systems are infallible; defendants admit that errors or oversights occasionally occur. However, the DOH investigates such errors upon discovery and takes the necessary corrective action. In any event, occasional errors or oversights do not constitute selective enforcement. *See LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir.1980) ("mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection") (citing *United States v. Rickenbacker*, 309 F.2d 462 (2d Cir.1962)).

Rossi submits the deposition testimony of Jeffery Cicio to support his allegation of differential treatment. The City's evidence shows that Cicio uses one full-term public space permit under LL15 through his corporation Hot Dog'n Boys. It seems, however, that the permit used by Hot Dog'n Boys is owned, not by Jeffery Cicio, but by Cicio's father, Frank Cicio, who is not involved with Hot Dog'n Boys. Frank Cicio's permit is a special veteran's vending permit, which only Frank Cicio is allowed to use. Jeffery Cicio states that, contrary to City regulation, he, and not his father, has been using the special permit. He also states that various people at the DOH and the Bureau of Inspections knew he was using his father's permit and did nothing to stop him, but his statement is conclusory and based on hearsay.

Cicio also testified at his deposition that he was able to use multiple restricted space permits to operate his vending business on public sidewalks. According to Cicio, he used restricted space permits, valid only for use on World Trade Center ("WTC") property, to operate on the public streets around the perimeter of the WTC. Cicio also testified that City officials knew he was operating his carts illegally in this manner, and regularly turned a blind eye to the practice. Again, this is hearsay

evidence. In any event, a ploy to avoid the regulator's gaze hardly proves selective enforcement. Cicio also outlined several other ploys engages in to evade the strictures of LL15, such as leasing permits from others, lying on permit applications, etc., but these ploys also do not prove selective enforcement.

Cicio's deposition testimony is largely speculative, and at best proposes hearsay as to whether the City acquiesced in Cicio's manipulation of the permit system. This evidence is neither competent to raise a triable issue of fact nor sufficient to avoid summary judgment. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (conclusory or speculative evidence does not raise issue of fact); *Sarno v. Douglas–Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) (hearsay statement "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) ("hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [an] affidavit") (internal quotation marks and citation omitted); Fed.R.Civ.P. 56(e) (affidavits in opposition to summary judgment motion "shall set forth such facts as would be admissible in evidence"):

### B. *Motivation*

█ Even assuming Rossi could raise an issue of fact as to differential treatment, he has also failed to raise a triable issue of fact as to whether the differential treatment either lacked a rational basis or was motivated by animus. Apparently conceding that the City has a rational basis for its permit schema, Rossi focuses his allegations, and his proof, on the issue of animus, contending that the City's permit scheme was designed, and has been en-forced, with the intent and purpose of stripping Rossi of his business in retribution for Rossi's outspoken political involvement.

Again, Rossi primarily relies on Cicio's deposition testimony as evidence of the City's alleged animus. But, again, Cicio's testimony is conclusory and hearsay. For example, Cicio testified that it was his belief that he lost his business "because The City of New York wanted to take away Dan Rossi's permits and there is no way they could take his without taking everyone else's." Cicio said this belief was based on "what [he] was told by [City] council people [and] attorneys for The City of New York." He also claimed, as did Rossi, that LL15 was passed in retribution for Rossi's involvement in exposing the Fifth Avenue Association, stating that "the intent of Local Law 15 was, in [his] eyes, to destroy the three men [Rossi, Cicio and Chris Foresnik] that went up to Albany and fought for the rights of disabled veterans." Cicio also testified about other hearsay conversations with City Council representatives to the same effect.

Again such conclusory, hearsay testimony is insufficient to create a question of fact and rescue this action from dismissal. *See Kerzer*, 156 F.3d at 400 (conclusory evidence not sufficient); *Sarno*, 183 F.3d at 160 (hearsay evidence not competent).

### SUMMARY

Rossi has not raised a triable issue of fact on either of the relevant issues: that the City is enforcing its permit rules against Rossi differently from the way the City enforces them against others, and that the City's enforcement of its permit rules was irrational or motivated by animus. Rossi has failed to raise any triable issue of fact that would save his case from being dismissed on summary judgment. Accordingly, the defendants' motion for

220

summary judgment is granted, and plaintiff's complaint is dismissed.

The Clerk of Court is directed to mark this matter as closed.

SO ORDERED.